Argued December 11; reversed December 27, 1945

BURK *v.* PORTLAND TRACTION CO.

(164 P. (2d) 720)

Before BELT, Chief Justice, and KELLY, BAILEY, LUSK, BRAND, and HAY, Associate Justices.

*William P. Lord,* of Portland (Ben Anderson, of Portland, on the brief), for appellant.

*John J. Coughlin,* of Portland (Griffith, Peck, Phillips & Nelson, of Portland, on the brief), for respondent.

KELLY, J.

There is one controlling question before us in this record. Error is conceded in instructing upon the law

of contributory negligence, no negligence by plaintiff having been pleaded by defendant.

The controlling question is whether this court can say from the record that such error did not substantially affect plaintiff's right. In other words, is the record such that we would be justified in affirming the judgment against plaintiff notwithstanding the error mentioned.

The negligence alleged in plaintiff's complaint is that said trolley coach was being driven in a negligent and careless manner by the operator of the coach negligently slowing up the coach to a sudden stop and jerk, and by the defendant negligently maintaining a seat in said trolley coach without an arm-guard on the side next to the aisle.

Three witnesses to the incident, upon which plaintiff's claim for damages is based, testified upon the trial in the circuit court. These witnesses were Mrs. Clary Batchelor, Mrs. Louise Fitzhugh and plaintiff.

Plaintiff testified that upon entering defendant's trolley bus and paying her fare, she placed the change given in her purse and seated herself beside Mrs. Fitzhugh upon the first seat behind the driver, which is at right angles to the aisle and sides of the bus. Between the driver and the seat just mentioned, there was a seat running parallel with the aisle with its back against the side of the bus. Mrs. Clary Batchelor occupied the portion of this last above mentioned seat nearest to the seat in which Mrs. Fitzhugh and plaintiff were seated. These seats were upon the left side of those facing the front of the bus.

There was no foot rest or guard of any kind in front of plaintiff's portion of the seat and there was no arm-guard on the side of said seat next to the aisle

which would enable plaintiff to prevent herself from being thrown out of the seat in case of a violent sudden jerk or stop. The driver testified that the passenger in the seat occupied by plaintiff could place her knee on the edge of the seat then occupied by Mrs. Batchelor.

Except for the driver's testimony, there is no showing of any protection against such a result as just mentioned in the event the bus gave a violent or sudden jerk.

We quote an excerpt from plaintiff's testimony:

"Q Now, what happened to you?
A Well, I was sitting there and the bus—he jerked the bus, throwed me right out in the aisle.
Q Who jerked the bus?
A The bus driver.
Q How bad a jerk was it?
A Well, he jerked it bad enough to throw me out in the aisle.

\* \* \* \* \* \*

Q And how had you landed in the aisleway?
A Please?
Q Did you land sitting up, or did you lay— — —
A (interrupting) I fell on my back. It rolled me all over the floor.
Q How did you get up?
A Somebody helped me up. I don't know who it was."

Mrs. Batchelor testified that she saw plaintiff fall on the floor and helped pick her up.

Mrs. Batchelor said also that she did not feel any sway or jerk at that time or any time on that car.

We quote the following excerpt from the testimony of Mrs. Fitzhugh:

"Q What were you doing then as you were traveling along in the bus?

A Why, I was just looking around, and when this slight, moderate sway came, I was just looking ahead to see what caused it, an open space between the passengers there and the outside view.

Q Now you are speaking about a sway. What sway?

A There happened to be a vehicle standing — —

Q (interrupting) What was that, please?

A Well, there was another car standing at the curb and the coach swayed to the left to pass it.

Q When you say 'swayed', was there any sharp movement of the bus?

A Just a moderate sway, just a normal sway.

Q Well, what happened?

A Well, Mrs. Burke went out into the aisle.''

Mrs. Fitzhugh also testified that she was accustomed to ''driving cars, trucks, thirty caterpillar tractor, and a large team of Percheron horses'' and that she considered that she knew what a sway is.

Dr. Chester G. Hall, the physician who attended plaintiff after her injury, testified that his examination of plaintiff showed numerous marks and bruises on the right hip and legs and that the principal trouble apparently was the end of the spine, the coccyx. The doctor's prognosis as to recovery was ''slow but fair''.

On February 7, 1944, plaintiff gave Dr. Hall a history of having sustained an accident. The treatment of plaintiff prescribed by Dr. Hall continued until June 21st. When asked whether in his opinion plaintiff's injury would be permanent, Dr. Hall said:

''I can't think there will be permanent injury, although it (recovery) will be slow.'' (Word in parentheses supplied.)

In this state of the record, the creditability to be accorded to the witnesses should be controlling upon the question whether plaintiff should recover from

defendant. In determining this question, the manner in which the witnesses testified is a very material factor to be considered. We have but the typewritten transcript. A jury would have the advantage denied to us of seeing and hearing the witnesses and observing their manner upon the stand as well as their personal characteristics. For this reason, we are unwilling to deprive the parties of a new trial to a jury.

Error is also assigned by plaintiff because of unseemly and irrelevant remarks made of and to plaintiff's attorney by opposing counsel. We have no reason to think that this course of conduct will again obtrude itself in the record of this case.

The learned and experienced trial judge, who presided in this case, doubtless knows that such incidents usually are one form of window dressing to attract the attention of the jury and sometimes to give assurance to the respective parties, plaintiff and defendant, that there is no collusion between the opposing attorneys. As much as these episodes are to be deplored, the fact remains that in most instances they are forgotten when the participating attorneys meet outside the courtroom. We cannot approve the course taken by defendant's attorney in that regard, and if, as contended by defendant, its attorney's remarks were merely retaliatory, the course thus taken by plaintiff's attorney provoking his opponent cannot be approved.

Because of the error on the part of the trial court in giving instructions to the jury upon the law of contributory negligence, and because from the record before us we think that this error did substantially militate against plaintiff's rights, the judgment of the circuit court is reversed and this cause is remanded for further proceedings consistent herewith.