## STATE ex rel GRIMM,
*Plaintiff-Relator,*

*v.*

## ASHMANSKAS,
*Defendant.*

## (CC 82-0373C; SC S30668)

690 P2d 1063

William L. Hallmark, of Hallmark, Griffith & Keating, Portland, argued the cause and filed the briefs for defendant.

John A. Wetteland, Jr., Portland, argued the cause for plaintiff-relator. With him on the brief was Lawrence Wobbrock, Portland.

Thomas E. Cooney, of Cooney, Crew & Wihtol, Portland, argued the cause amicus curiae on behalf of the Oregon Medical Association. With him on the brief was Connie K. Elkins, Portland.

Richard P. Noble, P.C., Portland, argued the cause amicus curiae on behalf of the Oregon Trial Lawyers Association. With him on the brief was Kathryn H. Clarke, Portland.

Richard K. Hansen, of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, filed a brief amicus curiae on behalf of the Oregon Association of Defense Counsel. With him on the brief was David C. Landis, of Landis, Aebi & Bailey, P.C., Portland.

JONES, J.

## JONES, J.

This is an alternative writ of mandamus proceeding brought by plaintiff-relator (plaintiff) against defendant, a judge of the Circuit Court of the State of Oregon for Washington County.

Plaintiff, Billy Joe Grimm, filed a claim for medical malpractice against Dr. Patrick Choong and, as part of plaintiff's pretrial discovery, voluntarily deposed Dr. Choong concerning his treatment of plaintiff's condition. Counsel for Dr. Choong then sought to depose Dr. Rustin, a physician who had later treated the plaintiff for the same condition.

Plaintiff filed a motion to quash the Rustin discovery deposition. The defendant judge entered his order denying the motion to quash on the ground that plaintiff, when he deposed Dr. Choong, waived his physician-patient privilege with regard to all other doctors who treated him for the same injury or illness or any related injury or illness. It is this order that plaintiff challenges in this mandamus proceeding.

The sole question presented in this matter is whether a plaintiff's voluntary act of deposing a defendant treating physician whom he is suing in a medical malpractice action constitutes a waiver of the plaintiff's physician-patient privilege with respect to other treating physicians concerning the same condition.

OEC 504-1 provides in relevant part:

"(2)   A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications in a civil action, suit or proceeding, made for the purposes of diagnosis or treatment of the patient's physical condition, among the patient, the patient's physician or persons who are participating in the diagnosis or treatment under the direction of the physician, including members of the patient's family.

"(3)   The privilege created by this section may be claimed by the patient * * *. The person who was the physician may claim the privilege but only on behalf of the patient. * * *"

The Oregon legislature adopted OEC 504-1 after carefully evaluating the history of the physician-patient privilege and its contemporary counterparts. The common law knew no privilege for confidential information imparted to a

physician. In the *Duchess of Kingston's Trial,* 20 How St Trials 573 (1776), a physician raised the question before Lord Mansfield whether he was required to disclose professional confidences. Chief Justice Mansfield responded:

> "If a surgeon was voluntarily to reveal these secrets, to be sure, he would be guilty of a breach of honor and of great indiscretion; but to give that information in a court of justice, which by the law of the land he is bound to do, will never be imputed to him as any indiscretion whatever." *Id.*

According to McCormick, Evidence 243, § 98 (3d ed 1984):

> "The pioneer departure from the common law rule was the New York statute of 1828 which in its original form was as follows: 'No person authorized to practice physic or surgery shall be allowed to disclose any information which he may have acquired in attending any patient, in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon.'"

■    Oregon adopted a statutory physician-patient privilege in 1862. General Laws of Oregon § 702(4) (Deady & Lane 1862). The rationale justifying the suppression in litigation of confidential communications between physician and patient is to encourage patients to disclose freely all matters which may aid in the diagnosis and treatment of disease and injury and that the privilege is necessary to secure the patient from disclosure in court of potentially embarrassing private details concerning health and bodily condition. The validity of the privilege has been questioned by most of the leading evidence authorities in this country. *See* 8 Wigmore, Evidence §§ 2380-91 (McNaughton rev 1961); Morgan, Foreward to Model Code of Evidence 28 (1942); McCormick, Evidence 244, § 98 (3d ed 1984).

With this long-standing skepticism about the establishment of a wide-ranging physician-patient privilege in mind, the Oregon legislature in 1981 adopted (effective Jan. 1, 1982) OEC 504-1, to be applicable to civil trials only and provided a specific waiver section in OEC 511. OEC 511 provides:

> "A person upon whom Rules 503 to 514 confer a privilege

against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication. Voluntary disclosure does not occur with the mere commencement of litigation or, in the case of a deposition taken for the purpose of perpetuating testimony, until the offering of the deposition as evidence. Voluntary disclosure does occur, as to psychotherapists in the case of a mental or emotional condition and physicians in the case of a physical condition upon the holder's offering of any person as a witness who testifies as to the condition."[1]

The relevant commentary to OEC 511 picks up the language in the commentary to the proposed Federal Rule of Evidence 511:

"The central purpose of most privileges is the promotion of some interest or relationship by endowing it with a supporting secrecy or confidentiality. It is evident that the privilege should terminate when the holder by [the holder's] own act destroys this confidentiality. [Citations omitted.]"

The Oregon legislative commentary continues:

"Waiver by disclosure of part or all of a privileged communication can occur in any situation, within or without the context of a lawsuit. The rule makes clear that the mere commencement of litigation does not constitute disclosure. *Neilson v. Bryson,* 257 Or 179, 477 P2d 714 (1970) (physician-patient privilege not waived by filing personal injury action). Thereafter, however, *waiver can occur during discovery* or at trial, either on direct or cross-examination. * * *" (Emphasis added.)

After a prolonged battle between the plaintiff bar and the defense bar in testimony before the 1981 House Judiciary Committee and the Senate Justice Committee as to when waiver of the physician-patient privilege should occur in personal injury and medical malpractice cases, the legislature opted to adopt one specific exception to the principle that waiver can occur during discovery. The commentary reads:

---

[1] General Laws of Oregon § 703 (Deady & Lane 1862), provided:

"If a party to the action, suit or proceeding, offer himself as a witness, that is to be deemed a consent to the examination also, of a wife, husband, attorney, clergyman, physician or surgeon on the same subject * * *."

"The one exception to the foregoing principle involves a deposition taken for the purpose of perpetuating testimony. Under the rule, the effect of any waiver of privilege that occurs in such a deposition is delayed until the deposition is offered as evidence by a party at trial. The Legislative Assembly added this provision to address the frequent problem where a party, which does not wish to disclose ahead of time the testimony of its expert and waive the privilege as to other experts consulted, must nevertheless do so because the expert whose testimony it wishes to use will not be available for trial. Counsel should be guided by professional responsibility, reinforced if necessary by the courts, in using this exception for its intended purpose."

Although our Oregon statutes do not distinguish between discovery depositions and depositions taken for the purpose of perpetuating testimony after a lawsuit has been filed, the differences are well known to the practicing bar.[2] Discovery depositions are taken of the parties in most personal injury and malpractice cases. ORCP 41 provides that counsel may reserve other evidentiary objections for the trial, but must object to the form of the question at the time of the discovery deposition. ORCP 41 provides in pertinent part:

"C.(1)  Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

"C.(2)  Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition."

■ ■  Discovery depositions usually are just that, to discover evidence with open-ended questions of a witness or an adverse party. In contrast, a deposition to perpetuate testimony is arranged by the litigants when it becomes known that a witness will be unavailable to testify at trial. "Perpetuation"

---

[2] ORCP 37 does recognize a procedure for taking a perpetuation deposition *before* a lawsuit is filed.

depositions usually follow the routine of a trial with objections to all matters being made at the time of the deposition but reserving the ruling on the objection for the trial judge. Perpetuation depositions are usually restricted to non-leading questions on direct examination and follow standard cross-examination techniques. Many perpetuation depositions are now being video-taped for trial giving the trial judge the opportunity to edit out the objectionable material before the perpetuated testimony is presented to the jury.

■      The Legislative Assembly, in the commentary to OEC 511, made an exception only for depositions taken for the purpose of perpetuating testimony. There is no legislative commentary specifically referring to discovery depositions. Nevertheless, we believe the legislature, in following its basic premise that the privilege should terminate when the holder by his own act destroys confidentiality, contemplated waiver when a plaintiff in a personal injury or malpractice action voluntarily takes a deposition of any physician whom he may have consulted or from whom he received treatment for the disease or injury involved in the litigation. The plaintiff may not say "I want discovery by deposition of defense witnesses which will reveal my treatment, condition and perhaps confidences, but you, the defendant, must wait for trial for discovery about my witnesses."

McCormick states:

"* * * [I]t is not human, natural, or understandable to claim protection from exposure by asserting a privilege for communications to doctors, at the very same time when the patient is parading before the public the mental or physical condition as to which he consulted the doctor by bringing an action for damages arising from that same condition. This in the oft-repeated phrase is to make the privilege not a shield only, but a sword. * * *" McCormick, *supra,* 256.

We recognize that OEC 511 provides that commencement of litigation is not sufficient to constitute a waiver of the privilege, but there is no legislative text and no policy reason to justify restriction of waiver of the privilege once the patient is parading before the public the mental or physical condition as to which he or she consulted the doctor by taking a voluntary pretrial discovery deposition.

As a matter of fact, the plaintiff's counsel in this case

is not concerned with the disclosure of confidences and intimacies upon which the privilege is based. Plaintiff's counsel candidly argued that once the privilege is waived the defense can discover the names of all of the physicians that plaintiff has consulted and depose those potential witnesses. He asserts this pretrial practice will skyrocket the cost of medical malpractice litigation because of the costs of taking the depositions, and because of the lawyers' time consumed in preparing for and attending the depositions. Counsel also claims that substantial delay in trials of cases will result because of the time consumed in obtaining transcription of the depositions. Plaintiff's counsel finally argues that once the identities of plaintiff's expert witnesses are known, certain members of the medical profession might try to persuade the physicians who indicate a willingness to testify against the defendant doctor to change their opinions for the sake of the profession. Counter-arguments could be that medical malpractice cases should not be filed "cheaply" and that any litigation that challenges the competency of a professional person should be carefully evaluated and thoroughly prepared with complete discovery. In any event, none of these claims or arguments is relevant to the basic reason for having a physician-patient privilege.

■  The legislature, after evaluating when waiver should occur, provided that the waiver of the physician-patient privilege may occur during discovery and provided one exception (a perpetuation deposition) which is not applicable in this case.[3]

We adhere to our statement in *State ex rel Calley v. Olsen,* 261 Or 369, 381, 532 P2d 230, 236 (1975):

> "'* * * [O]nce a patient has intentionally* offered or *taken the testimony of one doctor,* either on trial or *by deposition, the privilege is then terminated* for all purposes relating to the

---

[3] We do not believe the legislature intended waiver to occur when a plaintiff in a personal injury or malpractice case is required by the opponent to submit to a pretrial discovery deposition, because in that situation the holder of the privilege is not voluntarily offering his or her confidential communications or personal condition to the public. *See, Nielson v. Bryson,* 257 Or 179, 183, 477 P2d 714, 716 (1970); *Reynolds Metals Co. v. Yturbide,* 258 F2d 321, 334 (9th Cir), *cert den* 358 US 840 (1958); Annot., *Pretrial Testimony or Disclosure on Discovery by Party to Personal Injury Action As to Nature of Injuries of Treatment As Waiver of Physician-Patient Privilege,* 25 ALR3d 1401 (1969).

injury or illness which was the subject of the testimony of that doctor." (Emphasis added.)

*Calley* can be distinguished factually because the deposition was of a non-party. In *Calley,* an insurance company sought the deposition of the records custodian of plaintiff's decedent's medical records to determine whether decedent's death was covered by the policy in question. Plaintiff took depositions of two doctors: one who treated plaintiff's decedent for injuries sustained in an accident and the other the medical examiner who examined the decedent after his death. The question before the court in *Calley* was whether the depositions of these two doctors waived the privilege as to other physicians from whom the decedent received treatment. The concern in *Calley* was with the physician-patient privilege and its waiver in relation to medical records. However, in order to reach the decision concerning the privilege and its relation to medical records, the court first discussed the waiver as it applies to a physician's testimony. In concluding its preliminary discussion concerning a physician's testimony, the court made the statement "once a patient has intentionally offered or taken the testimony of one doctor, either on trial or by deposition, the privilege is then terminated." *Id.*

We believe the rationale of *Calley* is equally applicable to this case. Waiver should take place whether the deposition is taken of an adverse party or a non-party witness. Because in this case the plaintiff took the testimony of the defendant-doctor by deposition, for discovery and not for perpetuation, the privilege terminated.

The order of the trial judge allowing discovery in this case is completely consistent with the text and commentary of OEC 511 and the rationale of *State ex rel Calley v. Olsen, supra.*

The alternative writ is dismissed.