William E. BRANDT, Plaintiff–Appellant,

v.

MEDICAL DEFENSE ASSOCIATES, a Corporation, Ira J. Kodner, M.D., Gary H. Myers, M.D., George Pelican, M.D., Defendants–Respondents,

No. 74873.

Supreme Court of Missouri, En Banc.

June 29, 1993.

David M. Duree, St. Louis, for plaintiff-appellant.

Peter F. Spataro, Joseph M. Kortenhof, St. Louis, and Gary P. Paul, Clayton, for defendants-respondents.

Richard S. Brownlee, III and Mary D. Winter, Jefferson City, for amicus, MSMA.

B.H. Clampett and Michael J. Cordonnier, Springfield, for amicus, RCA Mut.

Morris E. Stokes, Kevin F. O'Malley and Mary L. Reitz, St. Louis, for amicus, MMIC.

Ronald R. McMillin, Lori J. Levine and Gerald M. Sill, Jefferson City, for amicus, MHA.

THOMAS, Judge.

### Background and Facts

This case ("*Brandt II*") arises out of the medical malpractice action entitled *Brandt v. Pelican,* 856 S.W.2d 658 (Mo. banc 1993) ("*Brandt I*"). In *Brandt I,* Plaintiff William E. Brandt sued Defendant George Pelican, his primary treating physician, for failing to warn concerning persistent peripheral neuropathy, which plaintiff claimed he incurred as a side effect of the drug Flagyl prescribed by defendant for plaintiff's anal Crohn's disease. In *Brandt I,* the jury returned a verdict in favor of the defendant.

Dr. Ira Kodner treated the plaintiff's anal Crohn's disease successfully after plaintiff's treatment by Dr. Pelican was terminated once the peripheral neuropathy condition became apparent and was diagnosed. Dr. Gary Myers treated the plaintiff for the peripheral neuropathy.

After the medical issues were joined and the depositions of Dr. Kodner and Dr. Myers had been taken in *Brandt I,* they each participated in ex parte discussions with the defendant and Paul Myre, an attorney for defendant's medical malpractice insurer, concerning plaintiff's condition and the medical issues in *Brandt I.* At the trial of *Brandt I,* Dr. Kodner and Dr. Myers were not called as witnesses by the plaintiff, but both were called to testify by the defendant. Both testified concerning their treatment of plaintiff's condition, and both also rendered certain expert opinions regarding plaintiff's condition and other medical issues in the lawsuit.

Following the trial of *Brandt I,* plaintiff filed the present action seeking actual and punitive damages based on civil conspiracy to breach a fiduciary duty (Count I) and civil conspiracy based on invasion of privacy (Count II) against Dr. Kodner, Dr. Myers, Dr. Pelican, and Medical Defense Associates, the medical malpractice liability insurer for Dr. Pelican in *Brandt I.*

Each of the defendants filed a motion to dismiss plaintiff's petition on various grounds, including that plaintiff's petition fails to state a claim or cause of action for which relief can be granted. The trial court granted the motions of all defendants. The Court of Appeals, Eastern District, reversed the trial court and held that a cause of action was stated against Dr. Kodner and Dr. Myers for breach of fiduciary duty when a physician takes part in an unauthorized ex parte discussion with the patient's adversary in litigation. The court of appeals also held that plaintiff's petition stated a cause of action against Dr. Pelican and Missouri Defense Associates for aiding and abetting Dr. Kodner and Dr. Myers in the commission of a tort, i.e., breach of fiduciary duty. We accepted transfer of *Brandt I,* and the court of appeals transferred *Brandt II* to us following the issuance of their opinion.

### Brandt I

In *Brandt I,* we held that section 491.060(5) creates only a testimonial privilege. The testimonial privilege as set forth in section 491.060(5) relates to the disclosure of confidential medical information by testimony in court or by formal discovery. We further held that there is nothing in the statute or the common law that would entitle plaintiff to a retrial in the underlying medical malpractice case because of the ex parte contacts between defendant's attorney and plaintiff's treating physicians. As we pointed out in *Brandt I,* our courts have historically treated this duty of confidentiality as arising under section 491.060(5), and we have referred to it along with the testimonial privilege generically as the physician-patient privilege. To distinguish this obligation of confidentiality, which we have now determined is not grounded in the statute, we will refer to this obligation as the physician's fiduciary duty of confidentiality.

### The Physician's Fiduciary Duty of Confidentiality

 The language in section 491.060(5) only covers the testimonial privilege, and our courts have recognized that at common law there was no physician-patient privilege. *Epstein v. Pennsylvania R. Co.,* 250 Mo. 1, 156 S.W. 699, 705 (1913); *Klinge v. Lutheran Medical Center of St. Louis,* 518

S.W.2d 157, 164 (Mo.App.1975). This does not necessarily mean that there is no protection in our law to prevent the physician from disclosing medical information of the patient under non-testimonial circumstances. If this duty of confidentiality is not grounded in either the common law or section 491.060(5), then what is its basis? Other courts that have addressed this same problem have found various grounds for legal protection. Courts in other jurisdictions have used "four major theories upon which recovery for wrongful disclosure by a physician may be based.... (1) breach of the [fiduciary] duty of confidentiality; (2) invasion of the right to privacy; (3) violation of statutes concerning physician conduct; and (4) breach of implied contract." Lonette E. Lamb, Note, *To Tell or Not to Tell: Physician's Liability for Disclosure of Confidential Information about a Patient,* 13 Cumb.L.Rev. 617 (1983).

One federal district court, when faced with finding a theory to support the physician's fiduciary duty of confidentiality stated: "Modern public policy, not the archaic whims of the common law, demands that doctors obey their implied promise of secrecy." *Hammonds v. Aetna Casualty & Surety Co.,* 243 F.Supp. 793, 796 (N.D.Ohio 1965). Likewise, the common law and the public policy of this state are not stagnant but are evolutionary. Furthermore, the courts of Missouri have recognized that "[a] physician occupies a position of trust and confidence as regards his patient—a fiduciary position." *Moore v. Webb,* 345 S.W.2d 239, 243 (Mo.App.1961); *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389 (Mo. banc 1989); *State ex rel. McCloud v. Seier,* 567 S.W.2d 127, 128 (Mo. banc 1978).

The legislature has implicitly recognized the existence of a physician's fiduciary duty of confidentiality. *See* § 578.353, RSMo 1986 (a physician is immune from civil liability when making report that a patient was treated for a gunshot wound); § 334.265, RSMo Supp.1992 (notwithstanding the rules of confidentiality, a physician who treats a patient who appears to be intoxicated for injuries sustained in an automobile accident may make a report to the highway patrol); § 192.067, RSMo Supp. 1992 (a physician may give the department of health information concerning a patient for epidemiological studies to safeguard the health of citizens of Missouri and will not be held either civilly or criminally liable for divulging confidential information); § 191.737, RSMo Supp.1992 (notwithstanding the physician-patient privilege, a physician may report to the department of health children who may have been exposed to a controlled substance and is immune from civil liability); § 188.070, RSMo 1986 (a physician who does not maintain the confidentiality of records pertaining to abortions is guilty of a misdemeanor and is to be punished as required by law); § 191.-743, RSMo Supp.1992 (if a physician receives consent from a high-risk pregnant woman to make a report to the department of health, this consent is deemed a waiver of the physician-patient privilege and the physician has immunity from civil liability); § 191.656, RSMo Supp.1992 (a patient's HIV infection status or the results of HIV testing shall be kept strictly confidential by a physician unless there is an explicit exception provided in this statute. If an exception applies, the physician will not be civilly liable). By providing specific exceptions to the physician's fiduciary duty of confidentiality, these statutes implicitly acknowledge that, in the absence of such an exemption, there would be a breach of this duty, which, in turn, constitutes a recognition by the legislature of the existence of the physician's fiduciary duty of confidentiality.

We believe a physician has a fiduciary duty of confidentiality not to disclose any medical information received in connection with his treatment of the patient. This duty arises out of a fiduciary relationship that exists between the physician and the patient. If such information is disclosed under circumstances where this duty of confidentiality has not been waived, the patient has a cause of action for damages in tort against the physician. In addition to a physician's legal fiduciary duty, a physician also has a separate ethical duty to maintain the confidentiality of information

received from a patient.[1] While the ethical principles may evidence public policy that courts may consider in framing the specific limits of the legal duty of confidentiality, this legal duty is to be distinguished from the ethical duty. The civil action for damages in tort is the sanction that puts teeth into the physician's duty of confidentiality. Pursuant to our holding in *Brandt I*, a breach of the physician's duty of confidentiality does not constitute error in or affect the underlying personal injury or malpractice case, because the language of section 491.060(5) covers only the testimonial privilege.

■ Of course, the physician's testimonial privilege and the fiduciary duty of confidentiality are not absolute; they must give way if there is a stronger countervailing societal interest. One such countervailing societal interest arises when a patient initiates litigation concerning the patient's medical condition. Because the patient will of necessity be required to waive the medical privilege in presenting evidence at trial, it is common for courts to find an implied waiver during the discovery stage of the litigation. The question presented here is whether ex parte discussions with the plaintiff's treating physicians are included within this implied waiver.

### The Patient–Litigant Waiver

■ In *State ex rel. McNutt v. Keet*, 432 S.W.2d 597 (Mo. banc 1968), we held "that once the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege under § 491.060(5) so far as information from doctors or medical and hospital records bearing on that issue is concerned." *Id.* at 601. This waiver, sometimes called the "patient-litigant" waiver, has been recognized in many jurisdictions.[2] Because *McNutt* preceded *State v. Beatty*, 770 S.W.2d 387 (Mo.App.1989), by several years, *McNutt* does not distinguish between the testimonial privilege and the physician's fiduciary duty of confidentiality. On the one hand, it discusses only the privilege under section 491.060(5); on the other hand, *McNutt* refers to a waiver that begins when plaintiff's physical condition is at issue under the pleadings and covers "information from doctors or medical or hospital records bearing on that issue." *McNutt* at 601. The timing and the breadth of the waiver suggest that it is not limited merely to the testimonial privilege. In actuality, at the time *McNutt* was decided our Court had not distinguished between the testimonial privilege and the physician's fiduciary duty of confidentiality, and it is not likely that the Court considered whether the waiver reaches both the testimonial privilege and the physician's fiduciary duty of confidentiality.

The issue of whether ex parte conversations are prohibited requires us to determine whether a *McNutt* waiver is a waiver of only the testimonial privilege or whether it covers both the testimonial privilege and the physician's fiduciary duty of confidentiality and, if so, when such waivers are effective. Courts considering this issue in other jurisdictions have gone both ways; some treat the patient-litigant waiver as a

1. The Hippocratic oath provides: "What I may see or hear in the course of the treatment or even outside of the treatment in regard to the life of man, which on no account one must spread abroad, I will keep to myself holding such things shameful to be spoken about." The AMA Principles of Medical Ethics provides, "[T]he physician should not reveal confidential communication of information without the express consent of the patient, unless required to do so by law." Id., Principle 4.

2. *Trans–World Investments v. Drobny*, 554 P.2d 1148 (Alaska 1976) (filing of personal injury lawsuit waives physician-patient privilege); *Mull v. String*, 448 So.2d 952 (Ala.1984) (when a plaintiff puts condition in issue by filing suit, physician-patient privilege is waived); *Collins v.*

*Bair*, 256 Ind. 230, 268 N.E.2d 95 (Ind.1971) (a patient by putting condition in issue waives the physician-patient privilege); *Sagmiller v. Carlsen*, 219 N.W.2d 885 (N.D.1974). But see *Bond v. Independent Order of Foresters*, 69 Wash.2d 879, 421 P.2d 351 (1966) (bringing of action for personal injuries not waiver of statute); *State ex rel. Grimm v. Ashmanskas*, 298 Or. 206, 690 P.2d 1063 (1984) (privilege not terminated until plaintiff has intentionally offered or taken the testimony of one doctor either at trial or by deposition). See also Barbara Podlucky Berens, Note, Defendants' Right to Conduct Ex Parte Interviews with Treating Physicians in Drug or Medical Device Cases, 73 Minn.L.Rev. 1451 (1989).

waiver of all aspects of the physician-patient privilege, while others have limited it to a waiver of formal discovery and trial testimony. *Transworld Investments v. Drobny*, 554 P.2d 1148 (Alaska 1976) (encourages use of informal methods of discovery); *Domako v. Rowe*, 438 Mich. 347, 475 N.W.2d 30 (1991) (allows informal methods of discovery); *Blohm v. Minneapolis Urological Surgeons*, 449 N.W.2d 168 (Minn.1989) (statute allows informal discussions); *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353 (Iowa 1986) (limited to formal discovery methods); *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990) (cannot interview plaintiff's non-party treating physicians privately unless have plaintiff's express consent or use statutorily recognized methods of discovery); *Nelson v. Lewis*, 130 N.H. 106, 534 A.2d 720 (1987) (limited to formal discovery methods); *Loudon v. Mhyre*, 110 Wash.2d 675, 756 P.2d 138 (1988) (in personal injury suit ex parte contacts not permitted, limited to formal discovery methods); *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986) (may only use formal methods of discovery) *cert. denied sub nom. Tobin v. Petrillo*, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987).

In examining the extent of the patient-litigant waiver, it is important to observe that when dealing with the issue of waiver of the medical privilege the Missouri courts have been called upon on several occasions to determine whether a waiver will be limited or complete. When faced with this issue, we have, without exception, rejected the idea of a partial waiver and applied the principle that once there is a waiver, it is a full waiver. For example, in *Epstein* we held that once the plaintiff takes the stand and testifies about his personal injury, he may no longer assert the privilege as to the testimony of his physicians. In *Baker v. Baker*, 251 S.W.2d 31 (Mo.1952), we said that when the plaintiff called one of his physicians as a witness to testify on his behalf about his injuries, he waived the privilege as to all physicians who had treated those injuries. In *Elliott v. Kansas City*, 198 Mo. 593, 96 S.W. 1023 (1906), we

held that waiver in a given trial constitutes waiver for purposes of all subsequent trials of that same cause of action.

There are at least two reasons for this guiding principle that a waiver is a full waiver. First, the medical privilege only covers matters that are confidential. Once there is a disclosure of the information in any form, it is no longer confidential and therefore no longer privileged. Second, and even more important, the Missouri courts have made it abidingly clear that a patient should not be allowed to use the medical privilege strategically to exclude unfavorable evidence while at the same time admitting favorable evidence. We have referred to this prohibited practice as "permitting the plaintiff to use the privilege both as 'a shield and a dagger at one and the same time' (which we do not believe the legislature intended),...." *McNutt*, 432 S.W.2d at 601. Judge Lamm, in his separate opinion in *Smart v. Kansas City*, 208 Mo. 162, 105 S.W. 709, 722 (Mo. banc 1907), was most outspoken in favor of these principles:

> A litigant should not be allowed to pick and choose in binding and loosing. He may bind or he may loose. If he binds, well and good; but if he looses as to one of his physicians, the seal of secrecy is gone—the spell of this charm is broken as to all. May one cry secrecy! secrecy! professional confidence! when there is no secrecy and no professional confidence? As well cry peace, peace, when there is not peace. Jeremiah vi, 14 q. v. To hold so leaves a travesty on justice at the whimsical beck and call of a litigant.... There is no reason in such condition of things, and where reason ends the law ends.

The foregoing is quoted with approval in *Epstein*, 156 S.W. at 710, overruling the majority opinion in *Smart* insofar as conflict existed, and again in *Demonbrun v. McHaffie*, 348 Mo. 1120, 156 S.W.2d 923, 924 (1941), where the Court went on to say: "If a patient waives the privilege, it ceases to exist. It may not be waived in part and retained in part." *Id.*

This principle (that the waiver of the privilege may not be strategically turned on and off by the party asserting it) plays a strong role in the rationale in *McNutt,* where the Court concluded that in a personal injury action it is inevitable that the plaintiff will waive the privilege by either testifying about the injuries or calling some physician to testify about the injuries (either or both of which is required for plaintiff to survive a motion for directed verdict). Since waiver of the privilege is inevitable, plaintiff should not be entitled to maintain the privilege through the discovery phase of the trial, thereby rendering the defendant ignorant of the medical facts. In *McNutt* we said:

> It thus becomes largely a matter of timing as to when the waiver, inevitably to occur, is to be recognized, .... If delayed until the trial is in process, then what happens is that the plaintiff either prevents the defendant from thereafter as a practical matter making effective use of the information available after waiver, while fully utilizing it for her own purposes, thus permitting plaintiff to use the privilege both as "a shield and a dagger at one and the same time" (which we do not believe the legislature intended), or it is made necessary for the trial court to disrupt the trial by granting defendant a continuance to assemble the now available information, or to declare a mistrial.

*McNutt,* 432 S.W.2d at 601.

We should apply these same principles in determining whether the *McNutt* waiver reaches only the testimonial privilege or also extends to the physician's fiduciary duty of confidentiality and allows ex parte communications with the plaintiff's treating physician. The physician should be free to receive input from all parties to the litigation as opposed to being sheltered from everyone except his patient. Once there is a waiver, then in preparing for and giving testimony neither the testimonial privilege nor the physician's fiduciary duty of confidentiality should be used to manipulate or in any way influence the testimony of the physician. To allow any such use in this manner would be another form of the prohibited use of "a shield and a dagger at one and the same time." *Id.*

■ The treating physician is first and foremost a fact witness, as opposed to an expert witness. In personal injury litigation, the treating physician is likely to be the principal fact witness on the issue of damages; in a medical malpractice case, the treating physician will often also be an important fact witness on liability. Because the treating physician uses medical training and skill both in diagnosing and treating the patient and in describing to the jury the plaintiff's condition and treatment, it is often assumed that the treating physician is automatically an expert witness. Actually, the treating physician only functions as an expert witness to the extent that one or both of the parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues.

■ The plaintiff's contention here seems to be bottomed on the assumption that a treating physician's duty to act with good faith requires the physician to give testimony that is favorable and beneficial to the patient and detrimental to the opponent. Such an assumption is invalid; a trial is a search for the truth and the primary obligation that the treating physician or any other witness owes in a trial is to tell the truth. If, for instance, a treating physician has determined that a patient made a full recovery and this issue is relevant to the litigation, the treating physician may, and in fact should, testify to this fact even though the patient may be claiming to the contrary.

The situation is no different where the treating physician is asked to testify as an expert. There is nothing embodied within the relationship between a treating physician and the patient that necessarily dictates either the style or the substance of the testimony that the treating physician must give at trial, even as an expert witness. It is not unusual for a party to elicit opinions from an opponent's expert that support the cross-examiner's side of the litigation. This is no less true in the case

of the treating physician than with any other witness.

There is an additional practical reason why ex parte contacts with the treating physician should not be prohibited. Medical witnesses are, at best, difficult to deal with. They are very busy and, given a choice, often would prefer not to be involved in litigation. Their time is expensive and many times they are unwilling to come into court to give live testimony, insisting rather that their deposition be used. When they do testify live at trial, they will want a designated time when they can arrive and go on the stand, which may be too difficult for the lawyers to arrange. The ability to pick up the telephone and talk informally with the doctor about the arrangements to testify is essential if the defendant is to avoid incurring the wrath of the physician by serving a subpoena and requiring the physician to appear at trial in the same manner as other witnesses. Moreover, since the physician's testimony is usually technical and scientific in nature, it is particularly important that the attorney who expects to elicit testimony from a physician have an opportunity to review with the witness the questions to be asked and the answers to be given.

Once the plaintiff makes a decision to enter into litigation, this decision carries with it the recognition that any information within the knowledge of the treating physician relevant to the litigated issues will no longer be confidential. On this point, *McCormick* states:

> [I]t is not human, natural, or understandable to claim protection from exposure by asserting a privilege for communications to doctors at the very same time when the patient is parading before the public the mental or physical condition as to which he consulted the doctor by bringing an action for damages arising from that same condition.

*McCormick on Evidence,* § 103. A trial under our system is a public event; it is not unreasonable to require a plaintiff who is asserting a claim against a defendant in which the plaintiff's physical condition is at issue to forego the confidentiality that would otherwise prevent the disclosure of this information.

### Conclusion

We hold that a physician has a fiduciary duty of confidentiality not to disclose any medical information received in connection with the treatment of the patient. We further hold that if any such information is disclosed under circumstances where this duty of confidentiality has not been waived, the patient has a cause of action for damages in tort against the physician.

We hold that the waiver of the medical privilege under *McNutt,* which occurs in a personal injury or medical malpractice case once there is an issue joined concerning the plaintiff's medical condition, is a waiver of both the testimonial privilege and the physician's fiduciary duty of confidentiality. We further hold that both of these waivers occur when the medical issues in the case are joined. As we held in *McNutt,* these waivers cover any information bearing on those medical issues. The fiduciary duty that the physician owes the patient to maintain in confidence medical information concerning the patient's mental or physical condition does not apply to an ex parte conference that is within the scope of the waivers. If a physician engages in an ex parte conference absent such a waiver or discloses any information beyond the scope of such a waiver, then the patient may maintain an action for damages in tort against the physician.

In *Brandt I* we reaffirmed our holding in *Woytus,* 776 S.W.2d 389, that we will not require the plaintiff to execute medical authorizations authorizing his treating physician to engage in ex parte discussions. It is important to bear in mind that even though waivers may be applicable, ex parte discussions may only occur with the consent of the physician. If the physician refuses to be interviewed, the defendant's only option is to take a formal deposition.

In reaching our conclusion, we stop short of enthusiastically endorsing the idea that a physician should freely engage in ex parte discussions regarding a patient's condition. When a doctor engages in ex parte

communications with a patient's adversaries, there is a risk that the disclosure will exceed the bounds of the waiver of the privilege. If this should occur, the physician risks being liable for the independent tort of breach of fiduciary duty. For this reason, physicians may be well advised to avoid ex parte discussions with the patient's adversaries absent a clear understanding as to what medical information is relevant to the patient's injuries then at issue. Once the physician's deposition has been taken, this may clarify what medical information is discoverable and therefore proper for informal discussion.

In the present case, the allegations in plaintiff's petition indicate that all of the ex parte contacts about which plaintiff complains occurred after the medical issues were joined. Moreover, there is no claim in plaintiff's petition that the treating physicians disclosed any confidential information unrelated to the medical issues in the case. Thus, at the time of the ex parte contacts, both the testimonial privilege and the fiduciary duty of confidentiality had been waived, and there is no claim that either of these physicians exceeded the scope of those waivers. There was no breach of the physicians' fiduciary duty of confidentiality, and no cause of action was stated.

The trial court was correct in dismissing plaintiff's petition; the judgment is affirmed.

ROBERTSON, C.J., BENTON and LIMBAUGH, JJ., and TURNAGE, Special Judge, concur.

COVINGTON and HOLSTEIN, JJ., concur in result in separate opinions filed.

PRICE, J., not sitting.

COVINGTON, Judge, concurring in result.

I concur in the majority's holding that the petition does not allege that the physicians in this case communicated any confidential information unrelated to the medical issues in the case. For this reason, the petition did not state a cause of action for breach of the physicians' fiduciary duty of confidentiality. For the reasons expressed in my separate concurring opinion in *Brandt v. Pelican*, 856 S.W.2d 658 (Mo. banc 1993), however, I am unable completely to concur in the majority opinion.

HOLSTEIN, Judge, concurring in result.

I concur in result. The precise issue in this case is whether plaintiff's petition is sufficient to state a cause of action. Here the petition does not allege that the physicians in this case communicated any privileged information. Because no privileged information was communicated, the petition is insufficient to state a cause of action for a breach of the fiduciary relationship by communicating information which was subject to the physician-patient privilege.

I cannot join in many of the statements made in the majority opinion to bolster its conclusion. Contrary to the majority opinion's suggestion, few, if any, physicians view their roles as "first and foremost a fact witness" in the process of "the search for truth." Most physicians see their primary role as one who treats and advises patients regarding their medical condition. Critical to that function is patient candor in advising with the physician. In order to promote candor by patients, most physicians faithfully adhere to the highest ethical rules of confidentiality, both before and after litigation has commenced. Nevertheless, I am willing to say that not every failure to live up to the highest aspirations of the medical profession translates into a cause of action against the physician.

The majority fails to acknowledge the many obvious dangers when a physician communicates ex parte with the litigation opponents of a patient. A physician who voluntarily has ex parte discussions about a patient's condition with a defense lawyer is perceived as an advocate *against* the patient. Such communication puts the plaintiff/patient at a disadvantage because the patient is usually unable to discover precisely what his or her own physician said or knows about the defense. Ex parte communication benefits only the defense and not the patient, and actually promotes hiding expert opinions helpful to the de-

fense, contrary to the fundamental purpose of our pretrial discovery rules. Ex parte communication raises questions of whether the physician has a duty to timely disclose the details of such conversation to the patient so that the patient may adequately prepare for trial.[1] There is a risk that the conversation will exceed the bounds of legitimate disclosure. Perhaps most importantly, ex parte communication undermines a patient's trust in a physician and may impede patient candor which is essential to sound medical treatment.

I also disagree with the assertion by the majority that requiring the patient or the patient's lawyer be present when a physician is interviewed by a defense lawyer regarding the patient's condition can be "used to manipulate or influence the testimony of the physician." Presumably, an honest physician's statement will be precisely the same, regardless of who is present during the interview. Nothing may be properly discussed in an ex parte interview that would not be the subject of questioning during a deposition at which all parties are present or represented. In sum, there is no sound reason for a physician to engage in ex parte discussions about a patient's condition with litigation opponents of the patient. There are compelling reasons that such discussions should be avoided. However, as already noted, that does not mean there is a cause of action each time a physician communicates with a defense lawyer.

I fear the majority fails to emphasize the dangers inherent in ex parte discussions by physicians regarding their patient's condition. I believe the Court should make it clear that the physician's primary moral and legal obligation is to be a physician to a patient, and only incidentally does a physician have a duty to be an instrument in the "search for truth." I concur in result.

---

**1.** This issue is not raised by the pleadings in this case and, thus, need not be addressed here.