No. 16 March 9, 2017 223

# IN THE SUPREME COURT OF THE
## STATE OF OREGON

Bill BARRIER
and Lee Ann Barrier,
as individuals and as husband and wife,
*Plaintiffs-Relators,*

*v.*

DOUGLAS BEAMAN MD, PC;
Douglas Beaman, MD;
and Summit Orthopedics, LLP,
*Defendants-Adverse Parties.*

(CC 140404994; SC S063974)

En Banc

Original proceeding in mandamus. *

Argued and submitted January 13, 2017.

W. Eugene Hallman, Hallman Law Office, Pendleton, argued the cause and filed the briefs for plaintiffs/relators on review. Also on the brief were Marc R. Bocci and Wm. Keith Dozier.

Janet M. Schroer, Hart Wagner LLP, Portland, argued the cause and filed the brief for defendants/adverse parties. Also on the brief were Michael J. Wiswall and Donna L. Lee.

Nadia H. Dahab, Stoll Stoll Berne Lokting & Shlachter PC, Portland, filed the brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

BREWER, J.

Peremptory writ to issue.

_____

\* On petition for a writ of mandamus from an order of Multnomah County Circuit Court, Youlee Yim You, Judge, dated February 25, 2016.

.

**BREWER, J.**

This is an original mandamus proceeding, arising from a medical negligence action in which plaintiff, who is the relator in this case, seeks damages for physical injuries. The issue is whether plaintiff, who—without objection by his counsel—answered questions in a discovery deposition about the treatment of his physical condition by health care providers, thereby waived his physician-patient privilege under OEC 511, so as to allow pretrial discovery depositions of those health care providers. This court allowed plaintiff's petition for an alternative writ of mandamus, in which he challenged a circuit court order that allowed the providers' depositions. We now conclude that, by answering questions about his treatment at his discovery deposition, plaintiff did not "offer"—and thereby voluntarily disclose—that testimony so as to waive his privilege. Accordingly, we issue a peremptory writ of mandamus directing the circuit court to vacate its order allowing the depositions.

## BACKGROUND

Plaintiff brought the underlying medical negligence action against defendants, seeking damages for physical injuries suffered as the result of a foot surgery that, as alleged in his complaint, left him with "severe and permanent injury to his right foot and ankle leaving him unable to use his foot and suffering constant pain and numbness." Plaintiff further alleged that he "has required follow up care and surgeries and suffered additional injuries to his head and back as a result of a fall related to his disability including a concussion and herniated discs which will also require future care and cause additional disability."

Defendants served plaintiff with a request for production of plaintiff's health care records, including records from his current primary care physician; records from "any podiatrist, orthopedist, orthopedic surgeon, neurologist, or neurosurgeon who treated him at any time"; records from any hospital he has visited within the past ten years; and records from labs, emergency medical transports, therapists, pharmacies, and more. As required

by ORCP 44 C, plaintiff provided the records that defendants requested.[1]

After plaintiff produced his health care records, defendants sought to take plaintiff's deposition and served his counsel with a formal notice of deposition. Plaintiff appeared at the deposition, during which he answered questions concerning the details of his care and treatment with 17 health care providers whose records plaintiff had produced. Plaintiff did not object to the questions or assert the physician-patient privilege at any point during his deposition.

Plaintiff has not taken the deposition of defendant Beaman or any other health care provider. However, after plaintiff's deposition, defendants sought to depose the 17 health care providers who had treated plaintiff and whose records had been produced. Plaintiff refused to waive the physician-patient privilege with respect to those depositions. Defendants then filed a motion to allow the depositions. The circuit court issued an order granting defendants' motion. Thereafter, plaintiff sought an alternative writ of mandamus from this court, directing the circuit court to vacate its order allowing the depositions and deny the motion or show cause why it should not do so. This court issued an alternative writ of mandamus. After the circuit court declined to vacate its order, the matter returned to this court on plaintiff's request for a peremptory writ.

Defendants do not dispute that plaintiff is the holder of a physician-patient privilege under OEC 504-1(2), which provides that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications in a civil action *** made for the purposes of diagnosis or treatment of the patient's physical condition." Instead, defendants contend that plaintiff has waived that

---

[1] ORCP 44 C provides:

"In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, upon the request of the party against whom the claim is pending, the claimant shall deliver to the requesting party a copy of all written reports and existing notations of any examinations relating to injuries for which recovery is sought unless the claimant shows inability to comply."

privilege by voluntarily disclosing in his discovery deposition communications and other matters relating to the treatment of his physical condition as provided in OEC 511.[2] They further argue that concerns of fairness require this court to dismiss the writ. As explained below, we conclude that defendants' arguments are misplaced, and, we therefore issue a peremptory writ directing the circuit court to vacate its order allowing the depositions of plaintiff's health care providers.

## ANALYSIS

Although it is a "creature of statute," *Nielson v. Bryson*, 257 Or 179, 182, 477 P2d 714 (1970), Oregon's physician-patient privilege dates back to the time of statehood. *See* General Laws of Oregon, Civ Code, ch VIII, title III, § 702(4), p 325 (Deady, 1845 - 1864). As noted, in its current form, the privilege allows a patient in a civil case "to refuse to disclose and to prevent any other person from disclosing confidential communications *** made for the purposes of diagnosis or treatment of the patient's physical condition." OEC 504-1(2).

Like other evidentiary privileges, the physician-patient privilege may be waived. OEC 511 provides:

"A person upon whom ORS 40.225 to 40.295 confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person *** voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication. Voluntary disclosure does not occur with the mere commencement of litigation or, in the case of a deposition taken for the purpose of perpetuating testimony, until the offering of the deposition as evidence. *** Voluntary disclosure does occur, as to psychotherapists in the case of a mental or emotional condition and physicians in the case of a physical condition upon the holder's offering of any person as a witness who testifies as to the condition."

Under that provision, the "voluntary disclosure" of a significant part of a privileged communication or matter is

---

[2] The text of that provision is set out below.

necessary to effect a waiver of the privilege. *State ex rel OHSU v. Haas*, 325 Or 492, 498, 942 P2d 261 (1997) (so stating). As the commentary to OEC 511 indicates, voluntary disclosure "can occur in any situation, within or without the context of a lawsuit." *See* OEC 511 Commentary (1981).

Within the context of a lawsuit, however, the legislature has provided guidance with respect to what constitutes the voluntary disclosure of communications or matters that are subject to a privilege. With respect to any privileged communication or matter, "voluntary disclosure" does not occur by the "mere commencement of litigation" or in a "deposition taken for the purpose of perpetuating testimony." OEC 511. In particular, communications and other matters that are subject to the physician-patient privilege may be "voluntarily disclose[d]"—and the privilege thereby waived—by specified conduct within the context of a lawsuit. Specifically with respect to the physician-patient privilege, "voluntary disclosure" of communications or other matters that are subject to the privilege occurs "upon the holder's *offering* of any person as a witness who testifies as to the condition." *Id.* (emphasis added). Because the rule expressly ties the voluntary disclosure of communications and other matters that are subject to the physician-patient privilege to the "offering" of a person as a witness, the meaning of that term is central to our inquiry.

The legislature has not defined what it means to "offer" a person as a witness. However, this court has held that a litigant may "offer" a person as a witness in a variety of contexts. As an example, where the plaintiff in a medical negligence action takes the discovery deposition of a defendant medical provider, this court has held that she has "offered" that person as a witness within the meaning of OEC 511. *State ex rel Grimm v. Ashmanskas*, 298 Or 206, 214, 690 P2d 1063 (1984); *State ex rel Calley v. Olsen*, 271 Or 369, 381, 532 P2d 230 (1975).[3] By offering the person as

---

[3] *Calley* was decided under *former* ORS 44.040 (1975), the predecessor statute to OEC 511. *Former* ORS 44.040(2) (1975) provided:

"If a party to the action, suit or proceeding offers himself as a witness, it is deemed a consent to the examination also of a * * * physician or surgeon * * * on the same subject."

a witness in a discovery deposition, the proponent waives the physician-patient privilege under OEC 511 with respect to "communications on the same subject with the same or other persons when a significant part of the privileged communication is voluntarily disclosed." *State v. Langley*, 314 Or 247, 264, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993) (internal quotation marks and citation omitted); *see also Grimm*, 298 Or at 214; *Calley*, 271 Or at 381.

Of course, in addition to offering a person as a witness in a deposition, a litigant may offer a person as a witness at trial. In the trial context, the Oregon Evidence Code—of which OEC 511 is a part—includes numerous uses of that term with respect to the offering of witness testimony. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (statutory context includes other related statutes); *see also State v. Ofodrinwa*, 353 Or 507, 512, 300 P3d 154 (2013) ("The context for interpreting a statute's text includes the preexisting * * * statutory framework within which the law was enacted." (Internal quotation omitted.)). In a consistent practice, the Evidence Code uses the term "offer" to refer to the presentation of witness testimony by its proponent. *See, e.g.*, OEC 103 (court "may direct the making of an *offer* in question and answer form" (emphasis added)); OEC 404(2)(a), (b), (d) (describing "offer[]" of character evidence by proponent).

---

As this court explained in *State v. Langley*, 314 Or 247, 264, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993):

"Before 1981, any testimony offered by a holder of privilege waived any communication that the holder had with any other person 'on the same subject.' *Former* ORS 44.040(2) *repealed by* Or Laws 1981, ch 892, § 98. There was unresolved inconsistency in this court's interpretation of the 'on the same subject' language. *See Stark Street Properties v. Teufel*, 177 Or 649, 658 n 212, 562 P2d 531 (1977) (citing cases and commenting that interpretation of 'same subject' depended on attitude of court toward policies behind privileges). In the medical treatment arena, this court held that once a patient intentionally offered testimony of one doctor, the privilege was terminated for all purposes related to that injury or illness. [*Calley*, 271 Or at 381]. Adopted in 1981, OEC 511 substantially reduced the inconsistency. It limits the scope of waiver to 'communications on the same subject with the same or other persons when a *significant part* of the privileged communication is voluntarily disclosed.' OEC 511 (emphasis added)."

Despite the noted differences between *former* ORS 44.020 (1975) and OEC 511, *Calley* provides a relevant understanding of what it means to "offer" a witness for purposes of effecting a waiver of the physician-patient privilege.

Whether in the context of a deposition or at trial, that understanding of what it means to "offer" a person as a witness is consistent with the ordinary meaning of the term: A proponent offers a person as a witness when she affirmatively "brings forward" or "presents" the person as a witness for testimony. *See Webster's Third New Int'l Dictionary* 1566 (unabridged ed 2002) (defining "offer" as "to present"; "to bring or put forward for action or consideration"; and "<~*ed* himself as a candidate for governor>"). In short, the text and context of OEC 511 establish that—whether in a deposition or at trial—only a proponent "offers" a person as a witness for the purpose of voluntarily disclosing communications or other matters that are subject to the physician-patient privilege.

That meaning of "offer" illuminates the issue before us. Under that meaning, when a plaintiff-patient participates in a discovery deposition and answers questions pertaining to her medical treatment at the behest of an adverse party, she has not offered herself as a witness within the meaning of OEC 511. Because the plaintiff must appear at a discovery deposition for which she receives proper notice, *see* ORCP 46 D (setting out the consequences of failing to appear at a discovery deposition after being served with proper notice, including dismissal of the action and payment of attorneys' fees), she cannot be said to have offered herself as a witness by answering questions in the deposition.[4]

As noted, this court's previous decisions are also consistent with that understanding. In *Calley*, this court explained that the relevant question in determining whether a waiver of the physician-patient privilege occurred is whether the plaintiff "offer[ed herself or another person] as a witness." 271 Or at 375. Again, the court went on to hold that a plaintiff "offers" her treating physician as a

---

[4] That understanding of the meaning of "offer" also explains why the legislature likely would have perceived the need to expressly exclude from the concept of voluntary disclosure testimony about privileged communications that is adduced through the offering of a person as a witness in a perpetuation deposition, unless and until the offering of the deposition as evidence at trial. But for that express exclusion, the proponent could be deemed to have offered the deponent as a witness (and thereby to have voluntarily disclosed any privileged communication or other matters elicited by the proponent in the deposition) by taking the deposition.

witness when she herself takes the deposition testimony of that treating physician. *Id.* at 381. Later, in *Grimm*, which was decided after the adoption of the Evidence Code, this court reiterated that understanding of the waiver rule in a medical negligence case. The question in that case was whether the plaintiff's voluntary act of deposing the defendant treating physician in a medical negligence action constituted a waiver of the plaintiff's physician-patient privilege with respect to other treating physicians concerning the same condition. After answering that question in the affirmative, the court went further and addressed the very question before us now:

> "We do not believe the legislature intended waiver to occur when a plaintiff in a personal injury or malpractice case is required by the opponent to submit to a pretrial discovery deposition, because in that situation the holder of the privilege is not voluntarily offering his or her confidential communications or personal condition to the public."

*Grimm*, 298 Or at 213 n 3. Because it was not essential to resolve the issue before the court in *Grimm*, that statement was *dictum*. However, it is consistent with the text of the statute in its context and therefore carries persuasive force. *See Halperin v. Pitts*, 352 Or 482, 494, 287 P3d 1069 (2012) (stating that "prior construction, even if *dictum*, could have persuasive force because of the soundness of its reasoning").

Defendants remonstrate that OEC 511 does not expressly indicate that the voluntary disclosure of communications or other matters that are subject to the physician-patient privilege can only occur when the holder of the privilege offers a witness who testifies concerning the privileged matter or communication. Although that is true, the last sentence of that section sets out a specific rule for when a waiver of the physician-patient privilege does occur within the context of litigation. The most reasonable reading of it is that the legislature thereby intended—by negative implication—to indicate that no waiver would occur until the holder herself "offers" a witness who testifies as to privileged matters. *Cf. Moro v. State of Oregon*, 354 Or 657, 671-72, 320 P3d 539 (2014) (holding that necessary negative implication of constitutional provision authorizing appointment of

attorneys as judges pro tempore of courts inferior to Supreme Court is that attorneys may not serve as judges pro tempore of Supreme Court). If voluntary disclosure also would occur when the holder appears and testifies as to privileged communications and other matters at the behest of the adverse party, there would have been no reason for the legislature to expressly tie voluntary disclosure of such communications and other matters to the offering of a person as a witness.

The legislative history of OEC 511 is consistent with the foregoing analysis.[5] In a subcommittee hearing preceding the enactment of the rule, Judge Robert E. Jones, a member of the Advisory Committee on Evidence Law Revision and a circuit court judge (later a member of this court), stated his understanding of then-current law that, in a civil action, the physician-patient privilege existed until the patient offered him or herself as a witness. Testimony, Subcommittee on Evidence of the Joint Committee on the Judiciary, HB 2030, Apr 8, 1980 (statement of Hon. Robert E. Jones). Judge Jones's statement stood uncontradicted. In addition to the remarks of Judge Jones, considerable discussion in subsequent committee hearings was devoted to whether the "voluntary disclosure" concept in the rule would apply to the physician-patient privilege.[6] However, nothing that we have found or to which the parties have referred us suggests that the legislature meant for voluntary disclosure of matters subject to the physician-patient privilege to occur through an opponent's deposition of a holder of the privilege, rather than when the holder of the privilege him or herself offers a person as a witness in accordance with the last sentence of the rule.

Defendants nevertheless argue that consideration of the salutary benefits of providing pretrial discovery of relevant evidence compels the conclusion that plaintiff waived his physician-patient privilege by participating in

---

[5] We have reviewed the official commentary to OEC 511 and found nothing that sheds meaningful light on the issue before us.

[6] Eventually, the essence of the last sentence of the rule was proposed, providing that voluntary disclosure would occur "at the holder's offering of the holder or other person as a witness." Exhibit R, House Committee on Judiciary, HB 2030, Mar 5, 1981, 9 (memorandum on HB 2030 Article V Privileges by Oregon District Attorneys Association).

his deposition. Defendants note that plaintiff could have refused to answer questions about his treatment by defendants and other health care providers based on that privilege, but failed to do so. *See* ORCP 39 D(3)(c) (providing that deponent may decline to answer question "to preserve a privilege"). Although that is true, it does not mean that plaintiff nevertheless voluntarily disclosed his testimony; as discussed, plaintiff did not "offer" his testimony by answering questions about the treatment of his physical condition in his discovery deposition.

Moreover, it is questionable whether defendants' construction of OEC 511 would achieve the benefits that they suggest. To the contrary, defendants' construction arguably would create a disincentive for plaintiffs in personal injury and medical negligence cases to cooperate in their discovery depositions. Instead, their counsel might well instruct them pursuant to ORCP 39 D(3)(c) to decline to answer questions pertaining to their medical treatment. That practice, in turn, could increase the likelihood of discovery disputes, increase the burden on the courts and expense to the parties, and create additional delays in litigation.[7]

It follows from our analysis that plaintiff did not voluntarily disclose privileged communications or matters or otherwise waive his physician-patient privilege under OEC 511 by answering without objection questions in his discovery deposition regarding the treatment of his physical condition.[8] Accordingly, we hold that a peremptory writ of mandamus directing the circuit court to vacate its order allowing the depositions of plaintiff's health care providers should issue.

Peremptory writ to issue.

---

[7] Of course, the legislature is free to enact a different framework for the waiver of privileges should it so choose. However, our duty is to interpret OEC 511 as written and in its context, not to engage in a free-ranging policy deliberation.

[8] Our holding in this case is limited to consideration of the physician-patient privilege. We do not consider whether and to what extent a waiver by voluntary disclosure of communications or matters subject to other privileges can occur in the context of a discovery deposition.