**STATE ex rel. Sean D. O'BRIEN, Public Defender for the Sixteenth Judicial Circuit, Relator,**

v.

**The Honorable William W. ELY, Judge, Division Two of the Sixteenth Judicial Circuit, Respondent.**

**No. WD 38251.**

Missouri Court of Appeals, Western District.

Oct. 14, 1986.

Sean D. O'Brien, Public Defender, Kansas City, for relator.

Albert A. Riederer, Pros. Atty., Jackson County, Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

Before CLARK, C.J., and SHANGLER, PRITCHARD, DIXON, TURNAGE, MANFORD and LOWENSTEIN, JJ.

SHANGLER, Judge.

The relator Public Defender for the Sixteenth Judicial Circuit petitioned for our

writ to prohibit the respondent circuit judge from appointment of the Public Defender as counsel for the contemnor cited for failure to pay an award of child support in a domestic relations proceeding. The petition of the relator alleges that the pretended appointment of the Public Defender as counsel for a civil contempt contemnor usurps judicial authority not granted by Public Defenders Chapter 600, under which the circuit judge purports to act. Our preliminary rule issued on the petition. It is now made absolute.

An order was entered by the respondent circuit judge on October 24, 1983 in the case: In re Barbara A. White and Vernon L. Stapleton, Domestic Relations case No. DR83–2784, that Stapleton pay to White child support money of $46.15 per week. Thereafter, on December 24, 1985, the county prosecutor moved the court for a citation of contempt against Stapleton and submitted, in support, an affidavit of arrearages that $1,292.20 was past due on the judgment. The motion alleged that Stapleton "willfully failed and refused to make payments," and prayed the court to enter an order "directing respondent to show cause why he/she should not be held in contempt of the orders of the Court and for such other relief as may be proper."[1]

A show cause order issued, and a hearing was scheduled for March 25, 1986. The contemnor Stapleton appeared *pro se* and White appeared with the prosecutor as counsel. The court invited the comments of the principals, and the prosecutor made the overture:

> Your Honor, the State's evidence will be that there's been no payment since July, that he was employed during that time period just up until recently, and—an open and shut case, Your Honor, in our opinion.

The court was then informed that Stapleton was without a lawyer. The court thereupon conducted this inquiry:

---

1. The motion of the prosecutor to cite for contempt is not before us as an exhibit or other supplement to this original proceeding for writ of prohibition. The excerpt is rescripted from the brief of the relator Public Defender and its authenticity is not disputed by the respondent circuit judge.

The Court: All right. Mr. Stapleton, are you employed?

Stapleton: No.

The Court: Do you have any funds with which to retain an attorney?

Stapleton: No. I don't.

. . . .

The Court: What is your situation?

Stapleton: I don't have any money to get an attorney. I can't afford any.

The Court: I won't hear the case today. I'll continue it and I'm going to appoint the Public Defender as your attorney. I'll make a finding that you're indigent and this case will be rescheduled.[2]

The order of appointment issued to the Public Defender, who thereupon moved the court to allow him to withdraw on the ground that the appointment was beyond the scope of representation allowed by § 600.042.3, RSMo Supp.1984, and hence beyond the jurisdiction of the court to fashion and enforce. The circuit judge denied the request to withdraw as appointed counsel, and thereupon our writ was sought, and issued.

The pleadings of the principals formulate two issues (1) the authority of the circuit court under § 600.042.3, RSMo Supp.1984, to appoint the Public Defender to represent an indigent person in a proceeding for civil contempt for failure to obey an order to pay child support (2) the authority of the circuit court under § 600.086.3, RSMo Supp.1984, to act as the determinant, in the first instance, that the person is indigent, and hence eligible for representation by the Public Defender.

The briefs address only the first issue, although the oral argument of the Public Defender alludes to them both. The brief of the Public Defender argues, simply, that § 600.042 [3] does not encompass a party to a domestic relations case—except, arguably, where the party was cited for contempt for failure to comply with an order in that case, and "in fact faces a loss of liberty." In such circumstances, the Public Defender acknowledges, the party "faces a loss or deprivation of liberty"—jail in fact—so that the party, if indigent, becomes entitled to the services of the Public Defender under components (4) and (5) of § 600.042.3 and the constitutional standard that statute enacts. The Public Defender argues, however, the fact of indigency once determined, the fact of the financial inability to make the payment required by the order of the court is also determined,[4] thus the contemnor Stapleton does not face jail—"the loss or deprivation of liberty"—and the provision of legal service to such a contemnor

2. The brief of respondent circuit judge cites a supplemental order entered by the court on April 8, 1986, an order not formally before us in these proceedings. The authenticity of that entry is not disputed, and since it bears on the arguments of law the principals present, we set out its terms. The order was, as we reconstruct it, entered contemporaneously with the order to deny the motion of the Public Defender to withdraw, also on April 8, 1986.

The trial court, having reviewed the verified application for contempt citation, and supporting affidavit, is not in a position to predetermine that the nature of the infractions is of insufficient gravity to warrant the imposition of imprisonment if Respondent is found in contempt of court, which would constitute a deprivation of liberty as contemplated by Section 600.042.3(5).

Furthermore, the Court has heard evidence from the Respondent himself leading to a finding by the Court that the Respondent is either indigent or, in the alternative, has intentionally and contumaciously placed himself in a position that he cannot comply with the Court's Order of Support, neither of which preclude a finding of contempt in any event.

3. The director and defenders shall provide legal services to an eligible person:

(1) Who is detained or charged with a felony, including from a conviction in each case;

(2) Who is detained or charged with a misdemeanor which will probably result in confinement in the county jail upon conviction, including appeals from a conviction in such a case;

(3) Who is detained or charged with a violation of probation or parole;

(4) For whom the federal constitution or the state constitution requires the appointment of counsel; and

(5) For whom, in [a] * case in which he faces a loss or deprivation of liberty, any law of this state requires the appointment of counsel.

* Inadvertently omitted by the revisor of statutes. See L.1982, pp. 700–701.

4. *See* *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 575 (Mo. banc 1976).

is beyond the authority granted to a defender by § 600.042.3 and beyond the jurisdiction of a court to impose.

The circuit judge responds that the authority of a Public Defender to agree to give services does not depend upon the class of case—whether domestic relations or criminal—but, under § 600.042.3(5), whether the indigent is a person "[f]or whom, in a case in which he faces a loss or deprivation of liberty, any law of this state requires the appointment of counsel." The circuit judge responds also that the supplemental order of April 8, 1986 [*see* n. 2] determines from the preliminary evidence[5] that Stapleton "is either indigent or, in the alternative, has intentionally and contumaciously placed himself in a position that [sic] he cannot comply with the Court's Order of Support," and hence "faces a loss or deprivation of liberty." Thus, the circuit judge reasons, the Public Defender must respond under § 600.042.3(5)—as well as under the constitutional principle of *Argersinger v. Hamlin,* 407 U.S. 25 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)—to his request for legal services.

We need not, and do not, undertake to respond to this ravel of argument and counter-argument. Nor do we concede them validity. We observe only that our Supreme Court en banc has but recently related that the public defender system was a response to their opinion in *State v. Green,* 470 S.W.2d 571 (Mo. banc 1971) "that it was the duty of the State to provide legal services to 'an indigent accused of crime,' " so that § 600.042.3, taken in terms of that antecedent history and its own context, "indicates that it is intended to require a public defender *in the guilt determination stages of prosecution. . . ."* *State ex rel. Marshall v. Blauer,* 709 S.W.2d 111, 112[1] (Mo. banc 1986) [emphasis added]. We observe also the *pre-Blauer* ruling by the Eastern District in *State ex rel. Shaw v. Provaznik,* 708 S.W.2d 337 (Mo.1986), that the public de-

fenders enactment "does not authorize a public defender to represent a person facing a charge of civil contempt" [at 339[1–3] ]. *See also State of Missouri ex rel. T. Patrick Deaton v. Honorable J. Miles Sweeney,* 716 S.W.2d 21 (Mo.App.So. Dist.,1986). Nevertheless, a person found [or cited] to have " 'contemptuously placed himself in a position so that he cannot pay [the] child support awards,' " although entered in a proceeding of civil contempt, actually faces an indirect criminal contempt, so that, if indigent, is entitled to appointed counsel on constitutional principles and to the services of the public defender under § 600.042.3(4) [id. at 340].

Our decision rests, rather, on the second issue raised by the pleadings and argued, albeit not briefed: the authority of the circuit court under § 600.086.3 to act as the determinant, in the first instance, that the person is indigent, and hence eligible for representation by the Public Defender. The writ of prohibition functions to confine judicial activity to within the limits of a cognizable authority, so as to prevent the usurpation of judicial power. *State ex rel. Eggers v. Enright,* 609 S.W.2d 381, 382[1–4] (Mo. banc 1980). The writ issues not of right, but at discretion, and is determined on grounds prompted by discretion. *State ex rel. Hannah v. Seier,* 654 S.W.2d 894, 895[1, 2] (Mo. banc 1983). Thus, a preliminary rule may be made absolute on a reason not briefed, but urged for the first time in oral argument, or "examin[ation of] new points not offered *ab initio." State ex rel. Carver v. Whipple,* 608 S.W.2d 410, 412[1] (Mo. banc 1980). We determine that the determination in the first instance, by the respondent circuit judge that Stapleton was indigent impaired the duty of the public defender under § 600.086.3, constituted a judicial usurpation of authority, and an excess of jurisdiction. *State ex rel. Shaw v. Provaznik,* 708 S.W.2d at 339[1–3].

The procedure to determine the indigency, and hence eligibility, of a person for

---

5. If that evidence consists of testimony other than the terse Stapleton response our opinion

already recites, it has not been reported to us.

representation by a public defender is delineated in § 600.086 of the enactment on Public Defenders. A person becomes eligible under that section: "when it appears from all the circumstances of the case including his ability to make bond, his income and the number of persons dependent on him for support that the person does not have the means at his disposal or available to him to obtain counsel in his behalf and is indigent as hereafter determined." The actual *determination* of indigency, subsection 3 directs: *"shall be made by the defender* or anyone serving under him at any stage of the proceedings and shall be *subject to appeal to the court* before which the case is pending." A person who claims indigency, moreover, must support that initiative by an affidavit of the factual information necessary for the determination of that issue. The "director or anyone serving under him" is empowered by subsection 5 to "institute an investigation into the financial status of any person seeking the services of the state public defender system" and is granted the authority to compel any person responsible for the support of the claimant or any person who holds property for the claimant to disclose information relevant to the inquiry—and even enables the investigator authority to probe records of public and private sources for information germane to the determination. The burden to persuade the defender or the court of the eligibility to receive legal services under the enactment, subsection 6 directs, "shall lie on the accused or the defendant." A person who intentionally falsifies an affidavit with the purpose to obtain public defender services, subsection 4 declares, "shall be guilty of a class A misdemeanor."

It is evident, as *State ex rel. Shaw v. Provaznik,* 708 S.W.2d at 341[4–6] holds, that under § 600.086.3

> it is the public defender who must in the first instance determine eligibility within the financial rules of legal representation at public expense ... The judiciary is to

intervene only upon appeal of the public defender's adverse decision.

It is equally evident that the determination of indigency the statute contemplates, whether by the defender in the first instance or by the court on appeal, is judicial in nature: as a fact found from evidence under a burden of proof imposed, met and acquitted. The statute contemplates that the determination shall issue after a deliberate inquiry, and to that end, requires the claimant to assert verified facts in support, and empowers the defender access to information even otherwise privileged.

The action of the respondent circuit judge to adjudicate the indigency of the party Stapleton, not as a subject of appeal but in the first instance,[6] was an arrogation under § 600.086.3, and prevented the public defender from the performance of that statutory duty. The respondent circuit judge exercised a subject matter jurisdiction the statute does not grant. It was an excess of jurisdiction the writ of prohibition will redress. *State ex rel. Shaw v. Provaznik,* 708 S.W.2d at 339[1–3].

Our preliminary rule in prohibition is made absolute.

CLARK, C.J., and PRITCHARD and DIXON, JJ., concur.

TURNAGE, J., concurs in separate opinion.

MANFORD, J., concurs in concurring opinion of TURNAGE, J., in separate opinion.

LOWENSTEIN, J., dissents in separate opinion.

TURNAGE, Judge, concurring.

I concur in the result that the preliminary order in prohibition should be made absolute, but for different reasons from those set forth in the majority opinion.

The fundamental question is whether or not the court was required to appoint coun-

---

6. The perfunctory procedure adopted by the respondent circuit judge to come to the fact of indigency—even were the matter properly before the court as an appeal—lacks even color of compliance with the essential proofs the statute requires for that determination.

sel to represent Stapleton, because if the court was not constitutionally required to appoint counsel, appointment of the public defender was not authorized under Sec. 600.042.3(4) RSMo (Cum.Supp.1984)[1] and it is unnecessary to discuss any other questions. Thus, if the court was not required to appoint counsel in this case, the preliminary order should be made absolute, because the trial court acted without statutory authorization to appoint the public defender. *State ex rel. Marshall v. Blaeuer,* 709 S.W.2d 111 (Mo. banc 1986). *Cf. Mid-Missouri Legal Services Corp. v. Kinder,* 656 S.W.2d 309[3] (Mo.App.1983) (court cannot frustrate statutory purpose of Legal Services Corporation by appointing corporation's attorneys in cases not contemplated by statute).

In *Hunt v. Moreland,* 697 S.W.2d 326, 328[4] (Mo.App.1985), the Eastern District Court of Appeals held that in every case of civil contempt for failure to pay child support the court must appoint counsel unless the contemnor makes a knowing and intelligent waiver of counsel. The court cited and relied principally upon federal cases and unfortunately overlooked a number of state court decisions that have held that it is not always necessary to appoint counsel in civil contempt cases. I find the reasoning in those state cases to be much more persuasive than the federal cases cited in *Hunt.*

In *State ex rel. Department of Human Services v. Rael,* 97 N.M. 640, 642 P.2d 1099 (1982), the court reached what I believe to be a correct result. The court stated the question in that case to be whether or not an indigent is entitled to court appointed counsel in a civil contempt proceeding brought to enforce an order of child support. The Department of Human Services had brought the *Rael* suit (much as the state files the show cause order for contempt in Missouri). The court first rejected the argument that has been followed in the federal courts—that appointment of counsel is necessary under *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32

L.Ed.2d 530 (1972). The court rejected that argument on the ground that the civil contempt proceeding is a civil action and not criminal. Similarly, in this state proceedings to enforce a child support order are ordinarily deemed civil contempt proceedings. *Teefey v. Teefey,* 533 S.W.2d 563, 566[4] (Mo. banc 1976). Because the action was civil, rather than criminal, the *Rael* court concluded that *Argersinger* did not apply and there was no sixth amendment right to counsel.

The *Rael* court next considered whether or not Rael was entitled to counsel under the due process clause of the fourteenth amendment because he faced the threat of imprisonment. The court analyzed this problem in light of *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Following *Lassiter,* the *Rael* court determined whether the due process clause entitled the indigent to appointment of counsel by weighing the private interest at stake, the risk that without appointed counsel the court would arrive at an erroneous decision, and the government's interest in avoiding the appointment. 642 P.2d at 1102.

The court first stated that Rael would lose his personal liberty only if it were shown that he had the ability to comply with the order for support and failed to do so. That is also the law in this state, as held in *Teefey,* 533 S.W.2d at 566[6, 7], and *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567, 575[2] (Mo. banc 1976).

The *Rael* court next pointed out that there was only slight risk that erroneous decisions would result unless counsel were appointed, since the legal and factual issues in a contempt hearing for failure to pay child support are generally not complex. The court stated the facts establishing the failure to pay are bookkeeping matters and are rarely subject to substantial dispute. There is even less room for dispute about the amount paid in this case, since any child support payments would be made to the court administrator. The *Rael*

---

**1.** All sectional references are to RSMo (Cum. Supp.1984).

court further pointed out the alleged contemnor is usually capable of making his own presentation concerning his ability to pay and any mitigating circumstances. The court held that the presence of a court-appointed attorney in civil cases would do little to enhance the decision making in most cases and, to the contrary, might inject a heightened adversarial atmosphere into an otherwise informal proceeding.

Finally the *Rael* court stated the government's interest in the proceedings is primarily financial, and the expense of appointed counsel and the additional costs in time and money resulting from lengthened proceedings defeat the government's interest.

The *Rael* court concluded that when all three factors had been balanced, there was no due process requirement that counsel be appointed in every instance. However, the court recognized that there might be cases in which a person would be deprived of a fundamentally fair hearing if assistance of counsel were not provided. The court concluded that the trial court is in the best position to evaluate on a case by case basis whether or not fundamental fairness would require the appointment of counsel to assist an indigent in presenting his case.

The court in *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980), reached the same result as the *Rael* court. In *Jolly* the court based its reasoning upon the approach the Supreme Court took in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), when the Court held that appointment of counsel was not necessary in every case in which the government sought to revoke probation or parole. The *Jolly* court decided on the basis of *Gagnon* that the minimum requirements of due process in civil cases may be satisfied by evaluating the necessity of counsel on a case by case basis.

Other cases in accord with *Rael* and *Jolly* are *Sword v. Sword*, 399 Mich. 367, 249 N.W.2d 88[6] (1976), *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1[3, 4] (1974), and *Davenport v. Jailer, City of Memphis*, 572 S.W.2d 265[2] (Tenn.App.1978).

I believe the vast majority of civil contempt cases involving the failure to pay child support present a simple and straightforward factual situation in which the alleged contemnor can state his case and adequately present his defense. After all, he may not be sent to jail for civil contempt unless the court finds that he is able to pay the child support. If the court finds he is able to pay, the imprisonment is not punishment for having failed to pay, but is only designed to make him decide to do that which is in his power to do. Because of the coercive rationale of civil contempt, the alleged contemnor's commitment to jail is not for a definite term. Indeed, as the cases recognize, the civil contemnor carries the keys to the jail in his pocket. Therefore, in most cases the threat to the alleged contemnor's liberty is so conditional and the risk of erroneous deprivation of liberty is so slight that the balance weighs against forcing the state to pay for an unnecessary attorney.

On the other hand, in those instances in which the trial judge determines that the issues are complex or novel or that the alleged contemnor is unable to present his defense adequately, fundamental fairness would require the appointment of counsel, and the court has the authority to make the appointment under the due process clause and § 600.042.3(4).

In this case, the trial court acted prematurely in appointing counsel without making a determination of whether fundamental fairness (and hence, procedural due process) requires such an appointment. I would hold that after there has been a determination of indigency in accordance with § 600.086, the court may only appoint the public defender to represent an alleged contemnor in a civil contempt proceeding for failure to pay child support when the court has determined that fundamental fairness requires the appointment of counsel. Only after such a determination would the appointment be authorized by § 600.042.3(4), which provides that the public defender shall provide legal services to an eligible person when the federal constitu-

tion or state constitution requires the appointment of counsel.

I concur in the result.

MANFORD, Judge, concurring.

I join in the concurrence of Judge Turnage for and upon the reasons set forth therein. I would, however, further express and urge the outright rejection of the rule announced in *Hunt v. Moreland,* 697 S.W.2d 326, 328 (Mo.App.1985). I would also urge that the present law under *Teefey v. Teefey,* 533 S.W.2d 563, 566 (Mo. banc 1976) not only be followed, but that in any case in the future wherein the contempt power of our courts is in question, a clear look be taken as to what is suggested by recent federal decisions and, more recently, in *Hunt, supra.*

The real question lies in a challenge of a court's inherent authority to enforce its orders, judgments, and decrees. I fear that attention has been and continues to be diverted from that necessary and requisite authority toward often-time unfounded and unnecessary involvement with the appointment of attorneys and the creation of more and more bureaucracy, all under the general guise and claim of procedural due process. Lest it be forgotten at the stage of the proceedings brought into focus by the present case and other like cases, the person responsible under the law for the support of the minor children involved has already had his or her day in court.

At the present juncture, the only thing in question is, did the party fail to follow the order of the court? Under our present procedure, he or she is given the opportunity to show cause for the failure to support. Not only should our trial courts maintain the power to enforce their orders, judgments, and decrees, but reviewing courts should be supportive of that power and should assure that it will be exercised judicially. It is that power which needs the support of both state and federal courts and not the further attempt to overburden our trial courts with the nonsense of more and more litigation, continuances of various cases, and any other factors which would further the delay. The resolution of the main issue is, after all, a very simple one, to wit: either compliance with the court's order and payment for the support of the children, or the giving of good cause why payment was not made; or upon the failure of either of the first two then immediate enforcement of the order, judgment and/or decree within the sound discretion of the trial court.

LOWENSTEIN, Judge, dissenting.

I respectfully file this dissent.

The Public Defender sought relief from the appointment by filing this writ of prohibition. As the majority notes, the thrust of the petition for extraordinary relief was the lack of statutory authority and therefore lack of jurisdiction to appoint the Public Defender to represent an individual in a civil matter. As relator, the Public Defender asked this court for a determination as to whether a person under a civil contempt citation for failure to pay child support was eligible for representation by it under § 600.042.3, RSMo Supp. 1984. The Public Defender also alleged in his petition and in its brief the judge's finding of Stapleton's indigency precluded his incarceration for failure to make support payments.

After having first sought relief on April 15, 1986 to obtain an appellate declaration the Public Defender was not susceptible to have to represent people who hadn't paid child support, the Defender then at argument on September 10, 1986, stated Judge Ely had no jurisdiction to determine indigency for appointment of counsel.

I believe this court should afford the Defender's office the answer to the threshhold question it sought. In the interest of judicial economy this court should make a declaration of the law on the issue before the court. It is the duty of an appellate court to finally and swiftly dispose of the case unless justice otherwise requires. *Pike v. Pike,* 609 S.W.2d 397, 400 (Mo. banc 1980); *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 196 (Mo. banc 1972); *Tay-*

*lor v. Coe*, 675 S.W.2d 148, 150 (Mo.App. 1984). *See* Rule 84.14.

The purpose of the writ was to obtain a strictly legal determination—it should be made one way or another. In the case at bar, Stapleton said he was not employed and did not have money to pay an attorney. It is hard to believe extensive investigation, form filing and testimony would turn up more as to whether the man can or cannot afford a lawyer. This court should go ahead and decide whether the Public Defender can be appointed in this type of case.