STATE ex rel. LESTER E. COX MEDICAL CENTERS, Relator,

v.

Honorable David DARNOLD, Special Judge, Circuit Court, Greene County, Respondent.

No. 79204.

Supreme Court of Missouri, En Banc.

April 29, 1997.

11. *See, e.g., State v. Hobokin,* 768 S.W.2d 76, 77 (Mo.1989).

214

James A. Burt, Clifton M. Smart III, Springfield, for Realtor.

David W. Ansley, Elizabeth H. Weber, Springfield, for Respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

WHITE, Judge.

Relator Lester E. Cox Medical Centers (Cox) is the defendant in a medical malpractice action pending in Greene County Circuit Court. The plaintiff in that action propounded interrogatories seeking information on "quality control" reports possibly compiled by the hospital regarding her care. Cox objected to the interrogatories, arguing that the information sought was privileged under the peer review committee statute.[1] Respondent, Judge Darnold, overruled Cox's objections and ordered Cox to answer the interrogatories. Cox then sought, and this Court granted, a preliminary writ prohibiting the judge from enforcing that order. Because we find that the interrogatories, as drafted,

demand the disclosure of information protected by the peer review committee privilege, the prohibition is made absolute.

The plaintiff in the underlying action, Doris Dixon, was treated at Cox South Medical Center, where, she alleges, negligent care caused her to have her leg amputated. In the course of discovery, Ms. Dixon propounded upon Cox the interrogatories at issue here:

State whether any document was prepared in the form of a quality assurance, quality assessment and/or quality management report which concerned the health care provided to Doris E. Dixon during her hospitalization at Cox Medical Center South from April 15, 1994 to May 31, 1994, and, if so:

(a) The name and address of the person or persons who requested the preparation of the report, record or document;

(b) The date of the request for preparation of the report, record or document;

(c) The date of the report, record or document so prepared;

(d) The name and address of the person or persons preparing the report, record or document;

(e) State whether any changes, alterations or additions were made to the report, record or document since the date of their initial preparation, and if so, please state:

(1) The person making the change, alteration or addition;

(2) The date of the change, alteration or addition;

(3) The nature of the change, alteration or addition.

The other interrogatory is identical except that it seeks information about Ms. Dixon's health care "while undergoing treatment" at Cox rather than "during her hospitalization" there.

■ Subsequent to this Court's decision that the findings of medical peer review committees were not privileged,[2] the legislature created a statutory privilege: "Except as otherwise provided in this section, the pro-

1. Section 537.035, RSMo 1994.

2. *State ex rel. Chandra v. Sprinkle,* 678 S.W.2d 804 (Mo. banc 1984).

ceedings, findings, deliberations, reports, and minutes of peer review committees concerning the health care provided any patient are privileged and shall not be subject to discovery...." [3] The peer review privilege is designed to encourage health care professionals to engage in candid, critical analysis of their peers' performance by shielding participants from liability for their comments during peer review and by ensuring that their disclosure cannot be compelled. The harm to participants in peer review occasioned by disclosure of privileged analysis cannot be remedied by appeal. Accordingly, prohibition is appropriate to prevent such disclosure. [4]

 Ms. Dixon avers that these interrogatories are designed to provide information related to quality control reports prepared by nurses who are not members of the committee and that such reports are not privileged. Cox responds that such reports are covered by the peer review privilege because they are for use by the peer review committee, and the nurses who prepare them are merely acting as the committee's agents. On these facts, we have no occasion to decide this dispute. The interrogatories at issue here are much broader than the information Ms. Dixon claims to be seeking. A peer review committee is "a committee of health care professionals with the responsibility to evaluate, maintain, or monitor the quality and utilization of health care services...." [5] Clearly, a "quality assurance, quality assessment and/or quality management report" of the committee falls squarely within the privilege. Although Ms. Dixon argues that she only seeks to discover the existence of such reports to assess whether they are privileged or not, the interrogatories themselves demand detailed information about the substance of these reports, specifically: whether any changes were made to the reports, who made them, and the nature of the changes. Answers to these questions would necessitate revealing the substance of the reports themselves. Interrogatories that squarely require the disclosure of material covered by the peer review privilege are overbroad and need not be answered. [6]

Ms. Dixon contends that, if Cox is not forced to answer these interrogatories, hospitals will attempt to clothe otherwise discoverable firsthand observations of personnel, such as quality control nurses, in the peer review privilege. The privilege clearly does not extend that far: "information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery ... merely because it was presented during proceedings before a peer review committee...." [7] Ms. Dixon's counsel conceded at oral argument that discovery requests could have been crafted to determine whether discoverable "original source" reports existed without making them so broad as to implicate the peer review privilege. "It is incumbent upon the party requesting the information to phrase the interrogatory with sufficient specificity as to exclude privileged information from its scope." [8]

The preliminary writ of prohibition is made absolute.

All concur.

3. Section 537.035.4, RSMo 1994.

4. *State ex rel. Faith Hosp. v. Enright,* 706 S.W.2d 852, 855 (Mo. banc 1986).

5. Section 537.035.1(2), RSMo 1994.

6. *State ex rel. St. Anthony's Med. Ctr. v. Provaznik,* 863 S.W.2d 21, 23 (Mo.App.1993); *State ex rel.* *St. John's Mercy Med. Ctr. v. Hoester,* 708 S.W.2d 796, 798 (Mo.App.1986).

7. Section 537.035.4, RSMo 1994.

8. *State ex rel. St. Anthony's Med. Ctr.,* 863 S.W.2d at 23.