STATE ex rel. HEALTH MIDWEST
DEVELOPMENT GROUP,
INC. Relator,

v.

The Honorable Jay A. DAUGHERTY,
Judge, 16 th Judicial Circuit,
Respondent.

No. 80258.

Supreme Court of Missouri,
En Banc.

March 24, 1998.

Rehearing Denied April 21, 1998.

Thomas G. Kokoruda, William E. Quirk, Lance V. Baughman, Shughart, Thompson & Kilroy, P.C., Kansas City, Steven D. Ruse, Overland Park, for Relator.

David M. Skeens, J. Michael Vaughan, Cindy L. Reams, Weisenfels & Vaughan, P.C., Kansas City, for Respondent.

BENTON, Chief Justice.

Manit Vajaranant, M.D., and his spouse Irma Vajaranant sued relator Health Midwest Development Group, Inc., for breach of contract, tortious interference with a business expectancy, defamation, and loss of consortium. The circuit judge ordered Health Midwest to produce information related to peer reviews at one of its hospitals, Lafayette Regional Health Center. The hospital sought a writ of prohibition, invoking the peer review privilege in section 537.035,[1] and the physician-patient privilege in section 491.060(5). The hospital also argues that the order is overbroad, oppressive, burdensome and intrusive. After the Court of Appeals, Western District, ordered a writ of prohibi-

1. All statutory references are to RSMo 1994.

tion to issue, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Writ quashed.

## I.

In January 1994, Dr. Vajaranant had open heart surgery. In May 1994, he returned to work at Lafayette Regional. In June 1994, the administrator summarily suspended Dr. Vajaranant's privileges, citing concerns about his ability to deliver quality obstetrical care. After peer review proceedings, the doctor's privileges were initially restricted, but later fully reinstated. The Vajaranants then filed the underlying lawsuit.

During discovery, the Vajaranants requested that the hospital produce certain documents of the Executive Medical Staff Committee and the Infection Control Committee, as well as other documents from the staff and the Community Board. The hospital objected to producing any documents that did not involve Dr. Vajaranant. The trial judge ruled:

1. Defendant shall provide Plaintiffs with information requested that relates to all summary suspensions, peer reviews and/or corrective actions which occurred at Lafayette Regional Health Center only. Defendant shall provide plaintiffs with such information dating from July 3, 1985, to July 3, 1995.

. . .

3. Defendant shall provide plaintiffs with requested information relating to Lafayette Regional Health Center's Infection Control Committee from January 1, 1990, to the present, including any documents relating to reports from the Infection Control Committee to the Medical Staff and/or the Community Board.

. . . .

## II.

At common law, there is no privilege for documents of peer review committees. *State ex rel. Chandra v. Sprinkle,* 678 S.W.2d 804, 807 (Mo. banc 1984). In order not to be subject to discovery, the disputed documents must fall within a statutory privilege.

The hospital contends that the documents are protected by the peer review privilege in subsection 4 of 537.035:

> Except as otherwise provided in this section, the proceedings, findings, deliberations, reports, and minutes of peer review committees concerning the health care provided any patient are privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for their release to any person or entity or be admissible into evidence in any judicial or administrative action for failure to provide appropriate care.

However, subsection 5 of 537.035 states:

> The provisions of subsection 4 of this section limiting discovery and admissibility of testimony as well as the proceedings, findings, records, and minutes of peer review committees do not apply ... when a member, employee, or agent of the peer review committee or the legal entity which formed such committee or within which such committee operates is sued for actions taken by such committee which operate to deny, restrict or revoke the hospital staff privileges or license to practice of a physician or other health care provider.

Subsection 5 nullifies subsection 4 when, as applicable here: 1) an entity that formed the peer review committee 2) is sued for actions taken by such committee 3) that operate to restrict the hospital staff privileges of a physician.

The hospital initially argues that subsection 5 allows discovery only of the peer review committee documents that are related to Dr. Vajaranant. The hospital, at oral argument, contended that subsection 5, by using the term "such committee," restricts discovery to documents from the specific peer review committee that restricted Dr. Vajaranant's privileges. Since the members of a peer review committee may change, the hospital concludes that Dr. Vajaranant may discover only documents produced by the very members that reviewed his case.

 Subsection 5 plainly states, however, that subsection 4 does not apply when the entity that formed such committee is sued for committee action that restricts staff privi-

leges. If this is the subject matter of a case, subsection 5 voids the privilege in subsection 4. The underlying case—a suit against the entity that formed the peer review committee that restricted Dr. Vajaranant's staff privileges—is one type of case where the provisions of subsection 4 "do not apply." The General Assembly has determined that in this type of case, the peer review privilege does not apply at all. The scope of both subsections 4 and 5 is peer review committees, plural, as demonstrated by their nearly identical introductory language. *Compare sec. 537.035.4 with sec. 537.035.5.* Section 537.035 does not support the narrower interpretations offered by the Relator hospital.

 Such narrower interpretations contradict the general principles that govern privileges. Statutes creating privileges are strictly construed. *State v. Kurtz*, 564 S.W.2d 856, 860 (Mo. banc 1978). Claims of privilege are "impediments to discovery of truth," "present an exception to the usual rules of evidence," and "are carefully scrutinized." *Chandra*, 678 S.W.2d at 807. Statutes creating privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980), quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1688 (1960) (Frankfurter, J., dissenting). In cases with the statutory subject matter, the legislature has determined that relevant evidence should not be excluded. Since privileges are impediments to the truth, and statutes creating them are strictly construed, the peer review privilege in section 537.035 does not apply at all when an entity is sued for actions of its peer review committee that restrict staff privileges. Here, at least the Executive Medical Committee acted to restrict Dr. Vajaranant's privileges. Therefore, subsection 4 does not apply in this case, and the trial court's order does not violate any peer review privilege.

## III.

The hospital also contends that the trial court's order violates the privilege in section 491.060(5), that a physician is incompetent to testify:

concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe and provide treatment for such patient....

This statute prohibits the disclosure of confidential medical information by means of formal discovery such as interrogatories, depositions, or production of medical records. *Brandt v. Pelican*, 856 S.W.2d 658, 661 (Mo. banc 1993). The peer review committee documents at issue here certainly contain confidential medical information.

The fact that documents fall within the scope of the physician-patient privilege does not end the inquiry. "The circumstances, facts and interests of justice determine the applicability of the physician-patient privilege to a particular situation." *State ex rel. Lester E. Cox Medical Center v. Keet*, 678 S.W.2d 813, 815 (Mo. banc 1984). The privilege is not absolute, but "must give way if there is a stronger countervailing societal interest." *Brandt v. Medical Defense Associates*, 856 S.W.2d 667, 671 (Mo. banc 1993). By enacting subsection 5, the General Assembly determined that peer review committee documents are not privileged when a doctor sues a hospital for actions taken by its committee that restrict staff privileges. If the physician-patient privilege were to prohibit the discovery of confidential medical information of peer review committees, then the words in subsection 5 of section 537.035 would have no meaning. *See Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993). In the absence of a statutory privilege, peer review documents are discoverable. *Chandra*, 678 S.W.2d at 807.

Patients must, however, be protected against humiliation, embarrassment or disgrace by appropriate protective orders. *Keet*, 678 S.W.2d at 815. To this end, identifying characteristics should be redacted, and the trial court should conduct an *in camera* inspection of the documents to ensure that patients are protected from humiliation, embarrassment, or disgrace. *Id.*

## IV.

Finally, the relator hospital argues that the trial court's order is overbroad, oppressive, burdensome, and intrusive. Relator first argues that the peer review information is not relevant to plaintiff's claims. Trial courts rule on discovery requests in the first instance, and appellate courts will prohibit the trial court from acting only in rare circumstances where the trial court abuses its discretion. *State ex rel. Norfolk & W. Ry. Co. v. Dowd*, 448 S.W.2d 1, 2–4 (Mo. banc 1969). Dr. Vajaranant claims that he was treated differently from other doctors in similar situations, and that complaints about his competency were a pretext to restrict his staff privileges. How peer review committees treated other doctors may be relevant in this case, and the trial court did not abuse its discretion.

Relator also contends that the order is overbroad since it covers a ten-year period. Rule 56.01(c) provides:

Upon motion by a party or person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

Relator has the burden of showing that the trial court's ruling is beyond judicial discretion. *Dowd*, 448 S.W.2d at 3; *see also State ex rel. Faith Hospital v. Enright*, 706 S.W.2d 852, 856 (Mo. banc 1986). A party must specify why a discovery request is overbroad, oppressive, burdensome or intrusive. Relator has made only general objections and not shown "good cause" for a writ of prohibition. A discovery request that covers a ten-year period is not per se objectionable. The record does not reflect how often any peer review committee met in that ten-year period, or how burdensome relator's compliance will be. However, the trial court should continue to monitor the discovery process, and may modify any order upon a showing of "good cause."

Relator finally contends that the discovery order requires disclosure of privileged information, and is therefore overbroad, citing *State ex rel. St. Anthony's Medical Ctr. v. Provaznik*, 863 S.W.2d 21, 23 (Mo.App.1993). As discussed, the order does not require disclosure of privileged information. Relator has not met its burden of proof.

### V.

The preliminary order in prohibition is quashed.

All concur.