In the Matter of STATE of Missouri ex rel. ST. JOHN'S REGIONAL MEDICAL CENTER, Relator,

v.

The Honorable David C. DALLY, Respondent.

No. 24771.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 31, 2002.

Motion for Rehearing and Transfer Denied Nov. 22, 2002.

Application for Transfer Denied Dec. 24, 2002.

Norman M. Krivosha, Robert M. Slovek, Kutak Rock LLP, Omaha, NE, Gretchen A. Long, Joplin, for relator.

Bruce A. Copeland, Copeland & Scott, Joplin, Mathew W. Placzek, Placzek & Francis, Springfield, for respondent.

Joanne E. Joiner, Gerald M. Sill, Jefferson City, amicus curiae in Support of Relator.

Before PREWITT, P.J., RAHMEYER, C.J., and MAUS, S.J.

PER CURIAM.

In an underlying breach of contract suit between St. John's Regional Medical Center ("St. John's") and Missouri Joplin Radiology, Inc. ("MJR"), the Honorable David C. Dally ("Respondent") ordered St. John's to "turn over" to MJR certain "peer review materials." Thereon, St. John's filed an original petition for prohibition in this court seeking to restrain Respondent from enforcing his order. St. John's contends that the requested materials are privileged and not discoverable per § 537.035.[1] We issued our preliminary writ which we now quash.

On July 1, 1990, MJR and St. John's entered into a written contract pursuant to which MJR agreed to provide radiology services in St. John's Hospital. Disputes about each party's performance under this contract first arose in 1997. Finally, on April 11, 2000, MJR filed a breach of contract suit against St. John's. On May 10, 2000, St. John's filed an answer and a counterclaim. In both of its pleadings, St. John's alleged MJR materially breached the contract by, among other things, "failing to participate in ongoing quality assurance program studies involving standards of care rendered in the radiology department in cooperation with the quality assurance department of St. John's, and by failing to prepare and present quality assurance reports at monthly radiology department meetings."

The discovery efforts by MJR included a first and a sixth request for production of documents directed to St. John's. For various reasons, including its claim that the materials sought were privileged per the peer review statute, St. John's objected to thirteen of MJR's requests in its first motion and thirty-two requests in MJR's sixth motion. The following are illustrative (but not all-inclusive) of the types of documents sought by MJR and which St. John's claimed were privileged as peer review materials:

> Minutes and reports of all meetings of hospital's quality assurance department/committee between July 1, 1990, and June 30, 2000;

> All correspondence, memorandums, or other documents from the Hospital's quality assurance department/committee

---

1. All statute references are to RSMo (2000), unless otherwise indicated.

to the Radiology Department between January 1, 1998, and June 30, 2000;

All quality assurance studies involving standards of care for every department in the Hospital from July 1, 1990, through June 30, 2000;

Any personnel files kept or maintained by or on behalf of St. John's for any physician employed by MJR between July 1, 1990, and June 30, 2000;

Any credentials files kept or maintained by or on behalf of Hospital for any physician employed by MJR between July 1, 1990, and June 30, 2000;

All documents wherein any person or committee at St. John's leveled a quality concern about or against any physician employed by MJR between July 1, 1990, and December 28, 1997;

The parties, being unable to resolve their disputes over discovery, ultimately submitted the matter to Respondent. On January 17, 2002, Respondent found that the § 537.035 peer review privilege applied "only to . . . 'any judicial or administrative action for failure to provide appropriate care.'" After noting that "[t]his is not such an action[,]" Respondent concluded that the requested peer review material was discoverable and ordered St. John's "to turn over the requested documents to [MJR] with only the names of patients redacted."

Thereon, St. John's petitioned here to prohibit Respondent from enforcing his order directing production of documents. St. John's alleges that Missouri's Peer Review statute, § 537.035, makes the peer review and credentialing documents privileged and non-discoverable even though the underlying suit was for breach of contract; that there is no exception to this statutory privilege; and that in any event, the documents requested are not relevant or reasonably calculated to lead to the discovery of admissible information.

Contrarily, MJR maintains that we should interpret § 537.035 as not shielding the requested documents from discovery because this is a contract action. Additionally, MJR alleges in its answer and then argues in its brief that St. John's waived the privilege otherwise afforded it by § 537.035 because (a) St. John's "injected the issues of quality, quality assurance, quality assurance studies, standards of care, cooperation with St. John's quality assurance department, quality assurance reports and radiology department meetings into this lawsuit by the allegations of its affirmative defenses and counterclaims[,]" and (b) St. John's "used documents which it claims [are] privileged under [§ 537.035] in preparing, educating and examining a non-party deposition witness[.]"

 In its reply brief, St. John's points out that "Respondent did not determine [St. John's] waived its right to assert the peer review privilege[ ]" and "[t]he sole basis for ordering production was that the peer review privilege did not apply to an action of this nature." Accordingly, St. John's insists that "the issue of waiver is not relevant to this Prohibition Proceeding." St. John's is simply wrong in this assertion. The petition in prohibition, the answer "directed to the petition," and any motions accompanying the answer form the pleadings in a prohibition proceeding. Rules 97.03 and 97.07, Supreme Court Rules (2002). *See State ex rel. Filkey v. Scott,* 407 S.W.2d 79, 80[1] (Mo.App.1966). MJR's answer to St. John's petition in prohibition raised the waiver issue and its brief contains a waiver argument. More than that, "[g]iven the discretionary nature of the prohibition remedy, [an appellate court] may accept limitations on the issues or examine new points not offered *ab initio.*" *State ex rel. Carver v. Whipple,* 608

S.W.2d 410, 412[1] (Mo.banc 1980); *State ex rel. O'Brien v. Ely,* 718 S.W.2d 177, 180 (Mo.App.1986). When considering prohibition, an appellate court is "not completely circumscribed by the prayer in relator's petition." *Whipple,* 608 S.W.2d at 412[1].

■ Here, we need not reach the statutory interpretation question presented by Respondent's ruling, i.e., whether § 537.035 has no application in a contract case, as deciding that issue is not essential to our resolution of the case. We quash our preliminary writ because even if § 537.035 would otherwise have shielded the requested documents from disclosure, St. John's by its conduct has waived such privilege. Moreover, we cannot discern from the record before us the validity, if any, of St. John's claim that the requested documents are not relevant or reasonably calculated to lead to the discovery of admissible evidence.

■ "Peer review, the process by which physicians and hospitals evaluate and discipline staff doctors, has become an integral component of the health care system in the United States." *Bryan v. James E. Holmes Regional Medical Center,* 33 F.3d 1318, 1321 (11th Cir.1994). In 1973, the Missouri legislature sought to promote peer review by creating a peer review committee privilege.[2] Specifically, it enacted § 537.035.4 which provides: "Except as otherwise provided in this section, the proceedings, findings, deliberations, reports, and minutes of peer review committees concerning the health care provided any patient are privileged and shall not be subject to discovery...." The public policy underlying this statutory privilege is to encourage candid and critical analyses of peers' performance by shielding the communications made during the peer review process from disclosure or compulsion. *Lester E. Cox Medical Centers v. Darnold,* 944 S.W.2d 213, 215 (Mo.banc 1997).

In *Health Midwest Development v. Daugherty,* 965 S.W.2d 841 (Mo.banc 1998), the Supreme Court of Missouri equated the statutory peer review privilege to other privileges when, in analyzing § 537.035, it characterized all privileges as impediments to the truth and declared that, as such, they are to be strictly construed. *Id.* at 843[3]. In a similar vein, the *Daugherty* court held that "the general principles that govern [other] privileges[ ]" are to be used in interpreting § 537.035. *Id.* at 843. *See also Dixon v. Darnold,* 939 S.W.2d 66, 70–71 (Mo.App.1997) (holding rule against blanket assertion of work product privilege sufficiently analogous to be applied when hospital attempts to make blanket assertion of peer review privilege).

■ With the foregoing principles as our guide, we begin our analysis of § 537.035 by considering in whose favor the peer review privilege exists. This we do because it is generally accepted that the privilege of nondisclosure of confidential communications can only be waived by the person or entity in whose favor it exists. *In re Marriage of Daneshfar,* 953 S.W.2d 95, 102 (Mo.App.1997); *Ex parte McClelland,* 521 S.W.2d 481, 484–85 (Mo.App. 1975); 81 AM.JUR. *Witnesses* § 294 (1992). Because § 537.035 is silent about who can assert the privilege and because no Missouri appellate court has addressed this issue, we draw, in part, from cases in other jurisdictions.

■ It is reasonable to conclude that "[t]he peer review privilege exists to pro-

---

**2.** Section 537.035.1(2) describes a "peer review committee" as "a committee of healthcare professionals with the responsibility to evaluate, maintain, or monitor the quality and utilization of healthcare services or to exercise any combination of such responsibilities."

tect the interests of not just one person but rather the *entire* peer review process (which exists not just for physicians but rather to improve the quality of medical care for all) and *all* those involved, including peer review committees, physicians who participate in them, and others who fall under its protection; it is personal not to one particular person but rather to the entire process and all those involved as a group." *Marshall v. Planz,* 145 F.Supp.2d 1258, 1273 (M.D.Ala.2001). "[U]nlike the accountant/client privilege which is personal to the client, the peer review privilege is general in nature and if personal to anyone or anything is personal to the peer review committee and its proceedings." *Terre Haute Regional Hosp. v. Basden,* 524 N.E.2d 1306, 1311 (Ind.App. 1 Dist.1988). It is also reasonable to conclude that "[n]o one physician can rightly waive that privilege without possibly doing harm to the process itself and others it protects, and thus to the overall public interests in quality medical care." *Marshall,* 145 F.Supp.2d at 1273. It follows, therefore, if anyone can waive the § 537.035 peer review privilege, it should be the entity capable of neutrally balancing the interests at stake, such as the entity responsible for general oversight of medical care. *Id.* In this case, that entity is St. John's.

Missouri's peer review statute does not explicitly address the issue of waiver, and no Missouri cases have directly considered that subject. Accordingly, we look for guidance in "the general principles that govern [waiver of other] privileges." *See Daugherty,* 965 S.W.2d at 843. Missouri courts have found waiver to exist in a number of circumstances, and the "at issue" waiver is prominent among them. The "at issue" waiver has been described as occurring " 'when the privilege holder makes assertions in a litigation context that put its otherwise privileged communications in issue.' " *Resolution Trust v.*

*Massachusetts Mut. Life Ins.,* 200 F.R.D. 183, 191 (W.D.N.Y.2001) (citations omitted). The fact that Missouri recognizes and applies the "at issue" waiver doctrine is best illustrated by *State ex rel. McNutt v. Keet,* 432 S.W.2d 597 (Mo.banc 1968), and its progeny. *McNutt* held that a party waives his or her physician-patient privilege in any case where such party voluntarily files a pleading that places his or her physical or mental condition in issue. *Id.* at 601. *See also Sappington v. Miller,* 821 S.W.2d 901, 904[12] (Mo.App.1992) (holding waiver of attorney-client privilege may be found where client places the subject matter of the privileged communication in issue).

 Privilege may also be waived when invoked in some fundamentally unfair way. The so-called "fairness doctrine" is grounded in the notion that it is unfair to permit a party to make use of privileged information as a sword when it is advantageous for the privilege holder to do so, and then as a shield when the party opponent seeks to use privileged information that might be harmful to the privilege holder. *In re von Bulow,* 828 F.2d 94, 101 (2nd Cir.1987). The rationale is that a party should not be able to use a privilege to prejudice an opponent's case or to disclose some selected communications for self-serving purposes. *U.S. v. Bilzerian,* 926 F.2d 1285, 1292[2] (2nd Cir.1991). Accordingly, a privilege may be waived when a party asserts a claim that in fairness requires examination of protected communications. *Id.* at 1292.

Without calling it the "fairness doctrine," Missouri courts apply its rationale when analyzing privilege waiver issues. Thus, in *McNutt* the court found that the legislature never intended for the physician/patient privilege to be used both as "a shield and a dagger at one and the same

time" and applied that reasoning, in part, when it found the privilege holder waived the privilege by putting his or her physical or mental condition in issue. 432 S.W.2d at 601. Missouri courts have historically invoked a "fairness" rationale to preclude a privilege holder from using the privilege strategically to exclude unfavorable evidence while at the same time admitting favorable evidence. *See Brandt v. Medical Defense Associates*, 856 S.W.2d 667, 672 (Mo.banc 1993).[3] *See also State ex rel. Southwestern Bell Publications v. Ryan*, 754 S.W.2d 30, 32 (Mo.App.1988) (holding *McNutt* analysis applicable when issue was waiver of accountant-client privilege); *State ex rel. Rowland v. O'Toole*, 884 S.W.2d 100, 103 (Mo.App.1994) (holding *McNutt* rationale applicable to statutory privilege accorded juveniles per § 211.271.3).

Here, St. John's was the entity capable of neutrally balancing the interests at stake and protecting the entire peer review process. However, rather than acting in a neutral manner, St. John's put its self-interest ahead of the public policy underlying the peer review privilege statute by making assertions in its pleadings that put otherwise privileged materials in issue. More than that, St. John's disclosed part of the documents it claimed were privileged when it was strategically favorable to do so, but otherwise continues to invoke the privilege on all other documents. Dis-

closure of these documents occurred in September 2000 in connection with the taking of the deposition of Dr. Howard Meridy, a non-party.[4] Dennis Manley, director of quality and risk management, testified that some of his duties were to oversee the quality program, risk management, and infection control. Moreover, his job included protection of peer review information from disclosure and working with St. John's lawyers in deciding what should be redacted from materials produced pursuant to discovery requests. Even so, he provided documents, the types St. John's claims were privileged, for use in Dr. Meridy's deposition without redaction, and St. John's lawyers used them in unredacted form as an exhibit to which Dr. Meridy referred during his deposition testimony. The documents thus disclosed, identified as Exhibit 55 at the deposition, included minutes of the Department of Radiology Quality Improvement Subcommittee for April, July, and October 1996. Each of these documents was stamped, "*CONFIDENTIAL* Quality Assurance Peer Review–Protected by Missouri Statute 537.035," yet were fully disclosed during the deposition. This occurred even though Mr. Manley candidly admitted that the documents included "case specific information" and not just "aggregate information."

Guided by the admonition in *Daugherty* that the peer review privilege is to be

---

**3.** The *Brandt* court quoted with approval Judge Lamm's comments in *Smart v. Kansas City*, 208 Mo. 162, 105 S.W. 709, 722 (Mo. banc 1907), concerning the need for "fairness" when dealing with claims of privilege:
" 'A litigant should not be allowed to pick and choose in binding and loosing. He may bind or he may loose. If he binds, well and good; but if he looses as to one of his physicians, the seal of secrecy is gone— the spell of this charm is broken as to all. May one cry secrecy! secrecy! professional confidence! when there is no secrecy and

no professional confidence? As well cry peace, peace, when there is not peace. Jeremiah vi 14, q.v. To hold so leaves a travesty on justice at the whimsical beck and call of a litigant. . . . There is no reason in such condition of things, and where reason ends the law ends.' "

**4.** Dr. Meridy had once been vice-president of medical affairs at St. John's, but was no longer an employee, officer, or director at the time of the deposition.

strictly construed and that the general principles that govern other privileges are to be used in interpreting § 537.035 and upon applying those principles, we conclude that (a) despite the public and other interests that underlie the peer review privilege, it is not an absolute privilege and can be waived; (b) the entity responsible for general oversight of medical care is the one that can waive the privilege, in this instance St. John's; and (c) St. John's has waived the privilege by placing the subject matter of the privileged information in issue and then attempting to use the privilege as "a shield and a dagger at one and the same time." [5] See McNutt, 432 S.W.2d at 601.

■■■■ Our holding necessarily means that some case-specific patient information will be disclosed via MJR's discovery efforts, albeit with patient names redacted and with any other protection that the trial judge can fashion while ensuring the litigants a fair trial. We are not persuaded, however, that such disclosure is fatal to our analysis or that the § 491.060(5) physician/patient privilege precludes incidental disclosure of redacted versions of patient records under the circumstances presented here. Due process, which requires a fair trial, is a strong societal interest that mandates the yielding of a privilege. See Brandt, 856 S.W.2d at 671–72; McNutt, 432 S.W.2d at 601. Without finding a waiver here, there is substantial potential that St. John's conduct would result in an unfair trial for MJR.

■■■■ Moreover, we are not persuaded the legislature intended the peer review statute as a reaffirmation of the physician-patient privilege as the dissent suggests. The Supreme Court of Missouri has concluded that the peer review statute was designed to shield healthcare professional participants from liability for their comments made during the peer review process. Darnold, 944 S.W.2d at 215. This interpretation of the peer review statute does not indicate reaffirmation of a physician/patient privilege since a patient has neither involvement in, nor opportunity to comment during peer review. More than that, the peer review statute reveals a legislative intent, at least in one instance, to restrict or limit the scope of the physician/patient privilege. See § 537.035.5.[6] Thus, when the § 537.035.5 exception is implicated, a patient's medical records are not protected by the peer review privilege and may be disclosed even though the patient has done nothing to waive his or her physician/patient privilege. See Daugherty, 965 S.W.2d at 843. We cannot discern how this reaffirms the physician/patient privilege. We remain convinced that St. John's could waive the peer review privilege in this case, and that it has done so.

---

**5.** In reaching our conclusion, we acknowledge that at least one court, based upon an interpretation of its state's statute, has held the privilege is absolute and cannot be waived. See, e.g., Emory Clinic v. Houston, 258 Ga. 434, 369 S.E.2d 913 (1988). Many states have statutes which specifically provide what person or entity may waive the privilege. See, e.g., Ind.Code Ann. § 34–30–15–10 (2002); K.S.A. § 65–4915 (2001) (Kansas); Tex. Occ.Code § 160.007(e)-(g); W.S.A. § 146.38 (2001) (Wisconsin). Based upon the language of our statute and existing Missouri law regarding privileges, we are confirmed in our belief that the privilege here has been waived.

**6.** Section 537.035.5 precludes peer review protection "when a member, employee, or agent of the peer review committee or the legal entity which formed such committee or within which such committee operates is sued for actions taken by such committee which operate to deny, restrict or revoke the hospital staff privileges or license to practice of a physician or other health care provider."

The only other remaining salient issue is the relevancy of the requested documents. As stated previously, this court cannot discern from the record presented whether St. John's claim—that the documents are irrelevant—is valid. The burden in a prohibition proceeding to demonstrate that the documents are irrelevant belongs to St. John's, i.e., the entity attacking the order. *State ex rel. Terminal R. Ass'n of St. Louis v. Flynn,* 363 Mo. 1065, 257 S.W.2d 69, 72 (1953). St. John's has not met this burden by the conclusory arguments in its brief; consequently, its contentions in this regard are denied. Because the record does not reflect the documents' relevancy, on remand, the trial court "should continue to monitor the discovery process, and may modify any order upon a showing of 'good cause.' " *Daugherty,* 965 S.W.2d at 844. This may include *in camera* inspections of the documents to determine their relevancy if the court is so inclined.

The preliminary order in prohibition is quashed.

PREWITT, P.J., and RAHMEYER, C.J., CONCUR.

MAUS, S.J., DISSENTS WITH ATTACHED OPINION.

ALMON H. MAUS, Senior Judge, dissenting.

I respectfully dissent. The resolution of this proceeding in prohibition involves the construction and application of the Peer Review Statute, RSMo § 537.035. The provisions of the statute directly relative to this proceeding are:

> MoRS § 537.035.4 "Except as otherwise provided in this section, the proceedings, findings, deliberations, reports, and minutes of peer review committees *concerning the health care provided any patient* are privileged

and shall **not be subject to discovery,** subpoena, or other means of legal compulsion for their release ... **or** *be* *admissible into evidence in any* judicial or administrative *action for failure to provide appropriate care."* (emphasis added)

MoRS § 535.035.5. "The provisions of subsection 4 ... limiting discovery **and** admissibility of *testimony* as well as the proceedings [and] *records* ... do not apply to any judicial or administrative action brought by a ... legal entity [that formed a peer committee] which ... operates to deny, restrict, or revoke the hospital staff privileges or license to practice of a physician or other health care providers or when ... the legal entity ... is sued for actions taken by such committee which operate to deny, restrict or revoke the hospital staff privileges or license to practice of a physician." (emphasis added)

The central issue in the underlying action is the termination of a contract providing for MJR to provide radiological services to St. John's Hospital. Nonetheless, it is not an action brought by the legal entity St. John's Hospital which "operates to deny, restrict or revoke the hospital staff privileges" of a health care provider. Nor is it an action in which St. John's Hospital is sued for actions taken by a peer review committee which operates to deny, restrict or revoke hospital staff privileges. In short, it is not an action that falls within the exception created by Subsection 5.

The privilege of § 535.035.4 extends only to proceedings and records "concerning the health care provided any patient." This provision recognizes and by implication incorporates the privilege created by MoRS § 491.060. "The following persons shall be incompetent to testify: ... (5) A physician ... psychologist or a dentist ...

concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to prescribe and provide treatment for such patient as a physician, chiropractor, psychologist or dentist." The privilege created by § 491.060 is referred to as the physician-patient privilege.

By construction of the statute, the privilege created by MoRS § 491.060 applies not only to testimony, but extends to medical records embodying such information. *State ex rel. Justice v. O'Malley*, 36 S.W.3d 9 (Mo.App. W.D.2000). In a similar vein, MoRS § 537.035.4 applies not only to records, but expressly bars testimony recounting a peer review proceeding "concerning the health care provided any patient." The scope of Subsection 4 has been established. "We hold that the proceedings, findings, deliberations, reports and minutes of the Realtor's peer review committees concerning the health care provided plaintiffs or any other patient are not subject to discovery by plaintiffs." *State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852, 853 (Mo.banc 1986).

However, the purpose of MoRS § 537.035.4 is more than to merely reaffirm the physician-patient privilege which otherwise exists. "The peer review privilege is designed to encourage health care professionals to engage in candid, critical analysis of their peers' performance **by shielding participants** from liability for their comments during peer review and by ensuring that their disclosure cannot be compelled." *State ex rel. Lester E. Cox Medical Centers v. Darnold*, 944 S.W.2d 213, 215 (Mo.banc 1997). (emphasis added) This aspect of the peer review statute could appropriately be said to create the "professional privilege".

It is established that records that fall within the ambit of MoRS § 491.060, the physician-patient privilege, are generally not discoverable. "There is no question that hospital records are included within the privilege." *Klinge v. Lutheran Medical Center of St. Louis*, 518 S.W.2d 157, 165 (Mo.App. E.D.1974). By the same token, the bar of § 537.035.4 prohibits compelling the production of peer review records concerning health care provided any individual in any proceeding not within the exception of § 537.035.5.

As noted, the provisions of the peer review statute include the privilege created by MoRS 491.060(5). Generally, that "privilege can only be waived by the patient and the doctor must protect the patient by asserting the privilege when applicable. *St. Louis Little Rock Hosp., Inc. v. Gaertner*, 682 S.W.2d 146, 151 (Mo.App. 1984)." *State ex rel. Dixon Oaks Health Center, Inc. v. Long*, 929 S.W.2d 226, 229 (Mo.App. S.D.1996). "Respondents therefore have a duty to appellant not to erroneously release his medical records. Breach of that duty may give rise to a suit for damages." *Thurman v. Crawford*, 652 S.W.2d 240, 242 (Mo.App. E.D.1983).

It is not necessary to determine if the same principles apply to the waiver of the professional privilege created by § 537.035.4. There is nothing in the record to suggest that the patients who are the subject of the peer review records in question have waived the physician-patient privilege in respect to those records. I do not believe St. John's Hospital by its misuse of a portion of the records, the subject of this proceeding, can waive the physician-patient privilege otherwise applicable to the records of the peer review committee in question.

The order of the trial court compels the production of the records in question and directs that the names of the patients re-

ferred to be redacted. It has been recognized that "[t]he circumstances, facts and interests of justice determine the applicability of the physician-patient privilege to a particular situation." *State ex rel. Lester E. Cox Medical Center v. Keet,* 678 S.W.2d 813, 815 (Mo.banc 1984). The privilege is not absolute, but "must give way if there is a stronger countervailing societal interest." *Brandt v. Medical Defense Associates,* 856 S.W.2d 667, 671. It is only after the determination that "a stronger countervailing societal interest" demands that the privilege give way, that the privilege must yield.

Even when that determination has been made "(p)atients must, however, be protected against humiliation, embarrassment or disgrace by appropriate protective orders ... To this end, identifying characteristics should be redacted, and the trial court should conduct an in camera inspection of the documents to ensure that patients are protected from humiliation, embarrassment, or disgrace." *State ex rel. Health Midwest Development Group, Inc. v. Daugherty,* 965 S.W.2d 841, 844 (Mo. banc 1998).

In this case the required determination of the demands of a societal interest has not been made. The court has not conducted an in camera inspection of the records. It determined that the physician-patient privilege recognized in and professional privilege created by the Peer Review Statute § 537.035 apply only to any judicial or administrative action for failure to provide appropriate care and that this is not such an action. That is not a correct determination of the applicability of that statute. I would make the Writ permanent.